GASSERT, RESPONDENT, *v.* STRONG ET AL., APPELLANTS.

(No. 2,548.)

(Submitted October 12, 1908.   Decided December 14, 1908.)

[98 Pac. 497.]

*Equity—Fraud—Constructive Trusts—Actions Quasi in Rem—Nonresident Defendants—Summons—Service by Publication—Jurisdiction—Undertakings on Appeal—Mortgages—Evidence—Review.*

Undertaking on Appeal—Sufficiency.
   1.   An undertaking on appeal, in an action in which the judgment was amended after entry, which recited that the appeal was from "the judgment and amended judgment" and an order denying a new trial, showed on its face that the appeal was from but one judgment, to-wit, the amended judgment, and the order.   The original judgment had become *functus officio* by the amendment, and reference to it was surplusage; hence one undertaking was sufficient to support the appeals.

Same—Defect—How Cured.
   2.   An undertaking on appeal which is defective, but not void, may be cured by filing a new undertaking.

District Judges—Disqualification—Power to Call Other Judge.
   3.   Under the provisions of section 6315, Revised Codes, authorizing a district judge against whom a disqualifying affidavit has been filed to call in another judge to sit in the action, one of the judges of a district court, divided into departments, may call in a judge from another district without first calling upon one of the judges of his own court to preside.

Action *in Personam*—Definition.
   4.   A proceeding *in personam* is one, in form as well as in substance, between parties claiming the right, and the judgment binds the judgment debtor and those in privity with him, to some sort of personal liability; in the execution of the decree the debtor is an active factor.

Action *in Rem*—Definition.
   5.   A proceeding *in rem* is one to determine the state or condition of the thing itself, and the judgment binds all the world.

Action *Quasi in Rem*—Definition.

6.  An action *quasi in rem* is one which, while brought against a person, seeks only to subject his property to the discharge of the claim asserted, and a judgment in such an action is only conclusive between the parties.

Same—Summons—Service by Publication—Jurisdiction.

7.  An action against a nonresident holding the legal title to corporate stock, in the possession of a third person in the state, to establish and enforce a trust therein, is one *quasi in rem*, and service by publication was sufficient to enable the district court to determine the relative rights of the parties to the stock.

Constructive Trusts—Fraud—Complaint—Sufficiency.

8.  A complaint in an action to have one of several defendants declared trustee *ex maleficio* for plaintiff's benefit, for an alleged conspiracy to defraud the latter out of his property, examined, and *held* to state a cause of action.

Same—Fraud—Transactions Between Parties—Burden of Proof—Presumptions.

9.  Where, in an action to have one of several defendants declared trustee *ex maleficio* it appeared that plaintiff, who was indebted to defendants in a large amount, and had given them mortgages on his property to secure the debt, had relinquished his equity of redemption on valuable mining property to one of them while in a weak mental condition resulting from habitual intemperance, which was known to defendants and contributed to by one of them furnishing him with liquor, and while under a misapprehension as to the status of his accounts with defendants and in a state of ignorance of business generally and of the value of the property, a presumption arose against the *bona fides* of the transaction, and the burden was upon defendants to show that no unfair advantage was taken of plaintiff and that an adequate price was paid for the property.

Same—Mortgagors and Mortgagees—Transactions Between—How Viewed.

10.  Where the relation of mortgagor and mortgagee has once been established, any subsequent arrangement by which the mortgagor's equity of redemption is sought to be transferred to the mortgagee will be viewed with distrust, and the original relationship of mortgagor and mortgagee held to exist unless it clearly appears that the transaction was perfectly fair and that no advantage was taken of the mortgagor by reason of his indebtedness.

Trustee and *Cestui Que Trust*—Transactions Between—Burden of Proof.

11.  Where, in addition to mortgages to secure indebtedness, absolute deeds to the property were delivered as further security, the relationship of trustee and *cestui que trust* arose between the debtor and creditor, and the burden was cast upon defendant in an action assailing the *bona fides* of the transaction, to show that, when the *cestui que trust* relinquished his rights to defendant, the transaction was fair, that an adequate consideration was paid, that there was no fraud or concealment, and that the *cestui que trust* acted with full information relative to the status of the property. The presumption is against the transaction.

Equity—Appeal—Evidence—Findings—Review.

12.  In equity cases it is incumbent upon appellant to show that the evidence preponderates against the findings of the trial court; if he is unable to do so, the supreme court will not interfere.

*Appeal from District Court, Silver Bow County; J. M. Clements, Judge.*

ACTION by Adam Gassert against Morgan Strong and others. From a judgment for plaintiff and an order denying them a new trial, defendants appeal. Affirmed.

*Mr. John J. McHatton, Messrs. Gunn & Rasch,* and *Messrs. Wight & Pew,* for Appellants.

The action under consideration is one *in personam.* (*Dearing* v. *Bank of Charleston,* 5 Ga. 497, 48 Am. Dec. 300; *Hinton* v. *Penn. Mutual Life Ins. Co.,* 126 N. C. 18, 78 Am. St. Rep. 636, 35 S. E. 182; *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565; 2 Black on Judgments, 2d ed., sec. 792 et seq.: *Hart* v. *Sansom,* 110 U. S. 151, 3 Sup. Ct. 586, 28 L. Ed. 101; *Cooper* v. *Reynolds,* 10 Wall. 308, 19 L. Ed. 931.) The fact that the corporation is a Montana corporation, and the certificates for the stock are within the jurisdiction of the court, is wholly immaterial in the absence of a statute providing for service by publication in such a case as this. (*Silver Camp Min. Co.* v. *Dickert,* 31 Mont. 448, 78 Pac. 967, 67 L. R. A. 940.) "The statutory provisions for acquiring jurisdiction over an absent or nonresident, by constructive service of summons, are in derogation of common law, and must be strictly construed and complied with in all substantial particulars, under pain of nullity." (*Palmer* v. *McMasters,* 8 Mont. 186, 19 Pac. 585.)

On the proposition of L. M. Strong's good faith, we call attention to the following authorities: Wigmore on Evidence, sec. 581; *Kruse* v. *Seiffert etc. Lumber Co.,* 108 Iowa, 352, 79 N .W. 118; *Gardom* v. *Woodward,* 44 Kan. 758, 21 Am. St. Rep. 310, 25 Pac. 199; *Stevens* v. *Stevens,* 150 Mass. 557, 23 N. E. 378; *Watkins* v. *Wallace,* 19. Mich. 57; *Boddy* v. *Henry,* 113 Iowa, 462, 85 N. W. 771, 53 L. R. A. 769.

Mere drunkenness, or being a drunkard, or simply being drunk at the time, where the intoxication does not extend to that degree where it takes away the agreeing mind, will not impair

a contract. To have this effect, it must render the party *non compos mentis* for the occasion. (Bishop on Contracts, secs. 980, 981; *Taylor* v. *Purcell,* 60 Ark. 606, 31 S. W. 567; *Willcox* v. *Jackson,* 51 Iowa, 208, 1 N. W. 513; *Loftus* v. *Maloney,* 89 Va. 576, 16 S. E. 749; *Watson* v. *Doyle,* 130 Ill. 415, 22 N. E. 613; *Wright* v. *Waller,* 127 Ala. 557, 29 South. 57, 54 L. R. A. 440; *Woodson* v. *Gordon,* Peck (Tenn.), 196, 14 Am. Dec. 743; *Burroughs* v. *Richman,* 13 N. J. L. 233, 23 Am. Dec. 719; *Bates* v. *Ball,* 72 Ill. 108.)

Deceit or fraud must be clearly and directly established. (*Shaw* v. *Gilbert,* 111 Wis. 165, ·189, 86 N. W. 188; *Miles* v. *Pike Min. Co.,* 124 Wis. 278, 102 N. W. 555; *Levy* v. *Scott* 115 Cal. 39, 46 Pac. 892; *Morris* v. *Talcott,* 96 N. Y. 100; *Davidson* v. *Crosby,* 49 Neb. 60, 68 N. W. 338; *Mosher* v. *Post,* 89 Wis. 602, 62 N. W. 516; *Hanscom* v. *Drullard,* 79 Cal. 234, 21 Pac. 736.) Fraud is never presumed. (*Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301.) The burden of evidence as to the existence of fraud is upon the party alleging it. (16 Cyc. 1082; *Bly* v. *Grady,* 113 Mich. 176, 71 N. W. 521; *Ley* v. *Met. Life Ins. Co.,* 120 Iowa, 203, 94 N. W. 568; *Harrigan* v. *Gilchrist,* 121 Wis. 127, 99 N. W. 909; *City of Tacoma* v. *Tacoma Water Co.,* 16 Wash. 288, 47 Pac. 738; *Southern Development Co.* v. *Silva,* 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678.) A person must stand by the words of his contract; and if he will not read what he signs, he alone is responsible for his omission. (*Upton* v. *Tribilcock,* 91 U. S. 45, 23 L. Ed. 203; Smith on Frauds, sec. 244; *Slaughter* v. *Gerson,* 13 Wall. 379, 20 L. Ed. 627; *Taylor* v. *Fleckenstein,* 30 Fed. 99; *Hawkins* v. *Hawkins,* 50 Cal. 558; *Board of Commissioners* v. *Younger,* 29 Cal. 172.)

"No conveyance, absolute on its face, can be a mortgage unless made to secure the payment of a debt or performance of a duty." (*Morrison* v. *Jones,* 31 Mont. 154, 77 Pac. 507.) "Where a deed, absolute on its face, is claimed to be a mortgage, the burden is upon the party setting up such claim to establish the fact." (*Bryant* v. *Broadwell,* 140 Cal. 490, 74 Pac. 33.) A mortgagor may sell and dispose of the property subsequently

to the giving of a mortgage, subject to the mortgage, and may deal with it in all respects as if the mortgage had not been given. He may subsequently sell and dispose of it to the mortgagee, as well as to any other person. (*Fee* v. *Swingly,* 6 Mont. 596, 13 Pac. 375; *Green* v. *Butler,* 26 Cal. 595; *Watson* v. *Edwards,* 105 Cal. 70, 38 Pac. 527; *First Nat. Bank* v. *Bell S. & C. Co.,* 8 Mont. 32, 19 Pac. 403.)

In cases of this character the courts have recognized that there is a vast difference between different classes of property. The rules applicable to ranch or farming property, residence property, or the like, would not be at all equitable in the case of oil or mining property. The sudden and unforeseen changes in the value of this class of property is, of course, too well known to require comment. (*Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587, 23 L. Ed. 328; *Mantle* v. *Speculator Min. Co.,* 27 Mont. 473, 71 Pac. 665.) Where the mortgage does not convey the title, but merely creates a lien, as under the laws of this state, there is no relation of trust between the mortgagor and mortgagee, and the mortgagee has the same right to purchase the property that a stranger to the mortgage would have. (*Green* v. *Butler,* 26 Cal. 595; *Ten Eyck* v. *Craig,* 62 N. Y. 406; *Walker's Admr.* v. *Farmers' Bank* (Del.), 10 Atl. 95; *McDonald* v. *Donaldson,* 47 Fed. 765; *DeMartin* v. *Phelan,* 115 Cal. 538, 56 Am. St. Rep. 115, 47 Pac. 356.) Where the mortgagee purchases the equity of redemption, the same consideration which would support a purchase by a stranger will be sufficient. (*Peugh* v. *Davis,* 96 U. S. 337, 24 L. Ed. 775.)

In the absence of fraud or oppression, the deed in question here is not rendered void for mere inadequacy of consideration. The parties are shown by the evidence to have been capable of contracting and did contract; and this court will not set that contract aside and substitute its own. (*Finlen* v. *Heinze,* 28 Mont. 548, 73 Pac. 123; *Burns* v. *Smith,* 21 Mont. 251, 69 Am. St. Rep. 653, 53 Pac. 742.) It is the policy of the law to discourage litigation; not to compel conflicting claimants to resort to the courts to settle their disputes (*Billau* v. *Kern* (Iowa),

107 N. W. 307; *Dickey* v. *Jackson,* 47 Or. 531, 84 Pac. 701) ; and the burden is upon the person attacking the settlement to prove that it was procured by fraud or duress. (*Billau* v. *Kern, supra; Galusha* v. *Sherman,* 105 Wis. 263, 81 N. W. 485, 47 L. R. A. 417.)

*Messrs. Lamb & Walker,* and *Messrs. Walsh & Nolan,* for Respondent.

This is not a case where two parties, occupying the attitude of perfect strangers, deal with each other, and one seeks to avoid his contract on account of his intoxication at the time it was entered into. It is a case of the mortgagee bargaining with the mortgagor for his equity of redemption. It is the case of a trustee claiming to have bought from the *cestui que trust* the trust property. For the rule applicable in such cases, see *Alexander* v. *Rodriguez,* 12 Wall. 323, 20 L. Ed. 406; *Peugh* v. *Davis,* 6 Otto, 332, 24 L. Ed. 819; 2 Jones on Mortgages, 340; 1 Bigelow on Fraud, 347; *Lynch* v. *Ryan,* 132 Wis. 271, 111 N. W. 707, 112 N. W. 427; *Moeller* v. *Moore,* 80 Wis. 434, 50 N. W. 396; *Bradbury* v. *Davenport,* 114 Cal. 593, 55 Am. St. Rep. 92, 46 Pac. 1062; *Wagg* v. *Herbert* (Okl.), 92 Pac. 250; *Oliver* v. *Cunningham,* 7 Fed. 689; *Marshall* v. *Thompson,* 39 Minn. 137, 39 N. W. 309; *Jones* v. *Frank,* 33 Kan. 497, 6 Pac. 789.) The burden is upon the grantee to show that the transaction was in every way fair, and the alleged purchase for a full and adequate consideration. This rule, readily deducible from the authorities above referred to, is declared in 1 Bigelow on Fraud, 347-349, and is expressly adjudicated in *McLeod* v. *Bullard,* 86 N. C. 210, and *Liskey* v. *Snyder,* 56 W. Va. 610, 49 S. E. 515. Though our law declares an absolute conveyance given as security a mortgage, the relationship of trustees and *cestui que trust* exists between the parties. The grantee in such a deed could convey good title to an innocent purchaser for value, and, on satisfaction of the mortgage, he could be compelled to reconvey to invest the mortgagor with the record title. (1

Jones on Mortgages, 339, 342b; 1 Perry on Trusts, 195; 28 Am. & Eng. Ency. of Law, 1020-1023.)

This is not an action for specific performance, but one to declare and enforce a trust; hence, *Silver Camp Min. Co.* v. *Dickert,* 31 Mont. 488, 78 Pac. 967, 67 L. R. A. 940, with reference to service of summons, has no application. The contention that the *situs* of the stock in question here was in New York, where the appellant L. M. Strong resided, and not in Montana, where was the domicile of the corporation under whose laws it was created, and within whose territory were the certificates, is contrary to the authorities. (*Young* v. *South Tredegar Iron Co.,* 85 Tenn. 189, 4 Am. St. Rep. 752, 2 S. W. 202; *Grayson* v. *Robertson,* 122 Ala. 330, 82 Am. St. Rep. 80, 25 South. 229; *Murphy* v. *Crouse,* 135 Cal. 14, 87 Am. St. Rep. 90, 66 Pac. 971; see, also, *Jellenik* v. *Huron C. M. Co.,* 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647; *Andrews* v. *Guayaquil etc. Ry. Co.,* 69 N. J. Eq. 211, 60 Atl. 568; *Jennings* v. *Rocky Bar Gold Min. Co.,* 29 Wash. 726, 70 Pac. 136.) That in an action to declare a trust, service of summons may be made by publication, see *Felch* v. *Hooper,* 119 Mass. 52; *Reeves* v. *Pierce,* 64 Kan. 502, 67 Pac. 1108; *Porter* v. *Baskin,* 43 Fed. 323.

In support of the proposition that the legislature may provide for service by publication in actions *quasi in rem,* see cases of *Clem* v. *Givens,* 106 Va. 145, 55 S. E. 567, and *Sohege* v. *Singer* (N. J.), 68 Atl. 64, both holding squarely that service by publication may be made in an action for specific performance when the property is within the state and the defendant beyond the jurisdiction, and *Andrews* v. *Guayaquil & O. Ry. Co.,* *supra.*

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced in the district court of Silver Bow county by Adam Gassert against Morgan Strong, Maud Bond Strong, L. M. Strong, and the Berlin Mining and Development

Company, the First National Bank of Butte, W. D. Thornton, and the North Butte Mining Company.

The third amended complaint, upon which the case went to trial, alleges, in effect, that Gassert is the owner of an undivided one-fourth interest in certain mining claims situated in Silver Bow county, which mining claims are designated as the Berlin group of mines, and hereinafter referred to as the Butte property; that from 1901 to 1905 the plaintiff had borrowed from the Strongs large sums of money, and, as security for such loans, had executed and delivered to them certain mortgages, and a deed dated January 6, 1904, covering plaintiff's interest in the Butte property and other property situated in Park county; that thereafter a settlement was had between plaintiff and the Strongs, by the terms of which $9,000 was agreed upon as the total amount of Gassert's liabilities to the Strongs, and to secure such indebtedness a mortgage was given to L. M. Strong upon plaintiff's Park county property, then standing in the name of Charles Gassert; that defendants Morgan, Maud Bond, and L. M. Strong entered into a conspiracy to defraud the plaintiff out of his interest in the Butte property, and, as one step in such conspiracy, procured the plaintiff to execute the deed of January 6, 1904, which, though absolute on its face, was in fact a deed in trust to secure moneys advanced and to be advanced to the plaintiff by the Strongs; that by mesne conveyances the mortgages had been assigned to L. M. Strong, and the legal title to plaintiff's Butte property had become vested in L. M. Strong; that defendant, L. M. Strong, in 1905 owned a one-fourth interest in the Butte property in his own right; that an agreement had been entered into by L. M. Strong with one S. A. Hall to convey to Hall the one-fourth interest which L. M. Strong held in his own right, and also the one-fourth interest claimed by the plaintiff; that Hall was to organize a corporation to be known as the Berlin Mining and Development Company, and that, as a consideration for the transfer of the Butte property, L. M. Strong was to receive one-half the capital stock of the corporation; that Hall assigned his interest in the contract to

the defendant Thornton, who organized the corporation, and that L. M. Strong thereafter entered into an agreement to sell to Thornton the shares of stock in the company which he was to receive, for $150,000, of which amount $50,000 has been paid; that such shares of stock had been placed in escrow with the First National Bank of Butte and A. J. Davis, its president, to be held pending the final payments of the purchase price; that Thornton had entered into some agreement with the North Butte Mining Company to sell to it the shares of stock so to be procured from L. M. Strong, but that no part of the purchase price had been paid.

It is further alleged, in effect, that the Strongs claim to hold a further release or conveyance of plaintiff's interest in the Butte property, but that, if such release or conveyance exists, it was obtained without any consideration, and that the consideration claimed by the Strongs to have been paid for such interest is grossly inadequate, and that such release or conveyance, if obtained, was obtained by fraud on the part of the Strongs; that at the time of procuring such release or conveyance, if any, the Strongs knew the value of plaintiff's interest, which, it is alleged, was $100,000, but fraudulently concealed the fact from the plaintiff for the purpose of acquiring his interest; that at and prior to such time plaintiff was addicted to the use of intoxicating liquors to such excess that he was incompetent to transact business, which fact was known to the Strongs, and that he was encouraged in his drinking habits by L. M. Strong and Morgan Strong, with the fraudulent purpose of procuring such release or conveyance; and that, if such release or conveyance was in fact ever made by plaintiff, he did not understand or appreciate the nature of the transaction. The prayer is that plaintiff be decreed to be the owner of one-half of the shares of stock for which L. M. Strong transferred the Butte property, and that such shares be impounded in the hands of the First National Bank and A. J. Davis, pending a final determination of this case.

The foregoing briefly paraphrases the amended complaint, and omits many allegations which are not deemed of consequence in the consideration of these appeals.

The defendant, L. M. Strong, first challenged the jurisdiction of the court, and, having taken an exception to the ruling of the court denying his contention, answered, as did the other defendants. After the trial had been in progress for some time the plaintiff filed a supplemental complaint, in which he alleged that the $9,000 mortgage given to L. M. Strong had been foreclosed, the Park county property sold under the decree, and the indebtedness due to L. M. Strong fully paid and discharged. It was developed at the trial that in 1902 Gassert had given to Maud Bond Strong one deed purporting to convey one-half of his interest in his Butte property, and another deed purporting to convey his remaining interest; and that soon thereafter Maud Bond Strong purported to convey by deed to L. M. Strong the same property. It was also developed at the trial that the capital stock of the Berlin Mining and Development Company was $200,000, represented by 20,000 shares of stock of the par value of $10 each. It was the contention of the plaintiff upon the trial that the note for $9,000, executed in 1905 and secured by mortgage upon the Park county property, evidenced all his indebtedness to the Strongs for moneys advanced and liabilities of his assumed by them. These appellants, on the contrary, controvert that theory, and claim that Gassert's indebtedness to the Strongs and his liabilities assumed by them amounted to approximately $14,400, and that by the settlement of June 17, 1905, Gassert received $5,400 for his Butte property.

The court made findings of fact and drew conclusions of law in favor of the plaintiff, to the effect that he is the owner and entitled to the possession of 7,500 shares of the stock in dispute, of a par value of $10 each, and a decree was entered in accordance with these findings and conclusions on July 19, 1907. On January 13, 1908, the findings of fact, conclusions of law and decree were amended, so as to read that plaintiff is the owner of 5,000 shares of stock, instead of 7,500 shares; and afterward

a motion for a new trial was made by the defendants Strong and overruled. Whereupon said defendants served and filed a notice of appeal, wherein they state that they appeal from the judgment of July 19, 1907, the judgment as amended, and the order denying a new trial. To perfect these appeals an undertaking in the sum of $300 was filed, wherein it is recited that the defendants appeal from "the judgment and amended judgment * * * and the order denying their motion for a new trial."

Respondent has moved to dismiss the appeals, for the reason that the same are taken from two judgments and an order denying a new trial, and but one undertaking is given. The motion to dismiss is denied. In the case of *Watkins* v. *Morris,* 14 Mont. 354, 36 Pac. 452, this court held that but one cost bond is required in appealing from a judgment and an order denying a new trial, where such appeal is consolidated into one record. The case of *Wadleigh* v. *Phelps,* 147 Cal. 135, 81 Pac. 418, cited by the appellants, is in point. In that case there was a motion to dismiss eleven separate appeals, or attempted appeals, from the judgment, verdict and various orders entered in the cause. The court said: "Respondent contends that the first six appeals should be dismissed because they are from nonappealable orders. This is true, but an order dismissing these appeals would be a vain act, for the simple reason that each and every of the enumerated orders is reviewable on the appeal from the judgment, and if that appeal stands the case would be in exactly the same condition after such order as it is now—the orders would still be reviewable. And this, in our opinion, is a fact which determines the true construction of the notice. It is, in substance and effect, a notice of appeal from a judgment, and nothing more. The special enumeration of the various orders reviewable on that appeal is mere surplusage, and ought to be so treated, for nothing can possibly come under review on the hearing which would not have been equally subject to review if such enumeration had been altogether omitted."

But it is urged by counsel for the respondent, on the authority of *Creek* v. *Bozeman Waterworks Co.*, 22 Mont. 327, 56 Pac. 362, that the court cannot look into the record to ascertain the nature of the order or judgment appealed from, because, where the ground urged for dismissal is that the appeal has never been properly perfected, the record is not before the court. But we do not find it necessary to examine the record in this case in order to arrive at the conclusion that there is but one judg-. ment appealed from. Neither is it necessary to determine how many judgments there may be in one case. The undertaking recites that "the defendants are appealing from the judgment and amended judgment" of the court. There is no question of two judgments. It is the judgment as amended that is appealed from, and that fact appears on the face of the under-taking. The reference to this judgment before amendment is surplusage, and will be so regarded. The amended judgment took the place of the original, which became *functus officio* when the amendment was made. Having determined, then, that the undertaking we have been considering was not a nullity, it fol-lows that the other defects therein pointed out by the respondent could be cured by filing a new undertaking (*Woodman* v. *Cal-kins*, 12 Mont. 456, 31 Pac. 63), which has been done.

For the convenient dispatch of business in the district court of Silver Bow county, the court is divided into three departments. This cause originally fell into department No. 1, presided over by Judge J. J. Lynch; Judge Lynch transferred it to depart-ment No. 3, presided over by Judge Donlan; the latter was dis-qualified by the defendants, and on motion of the plaintiff he requested Judge Clements, of the first judicial district, to try the case; defendants objected to going to trial before Judge Clements, and urged as a ground of objection that either Judge Lynch or Judge Bourquin, the other judges of the second judi-cial district, should first be requested to preside. The court over-ruled this objection, and this action is assigned as error. The comments upon this assignment of error found in appellants' brief are more in the nature of suggestions than arguments.

No reason is urged why the action of Judge Donlan in calling in Judge Clements was not proper, and in view of section 6315, Revised Codes, expressly reserving to a disqualified district judge the power to transfer the action or proceeding to some other court, or to call in another district judge to sit and act in such action or proceeding, we know of none.

The defendant, L. M. Strong, is a resident of the state of New York, and service of summons was made upon him by publication pursuant to the provisions of section 637 of the Code of Civil Procedure of 1895 (Revised Codes, sec. 6520), as in force prior to the amendment of 1907. It is insisted by appellants that such service was ineffectual, and *Silver Camp Mining Co.* v. *Dickert,* 31 Mont. 488, 78 Pac. 967, 67 L. R. A. 940, is cited in support of this contention. In the *Silver Camp Case* this court held that a suit to enforce the specific performance of a contract to convey real estate is a proceeding *in personam,* notwithstanding the fact that the land, the subject of the controversy, was located within this state and within the jurisdiction of the court; and we think it will not be questioned now that service by publication will not warrant a judgment in a proceeding strictly *in personam,* and that for the very obvious reason that the process of a court of this state does not have any validity beyond the borders of the state. On the other hand, every state has jurisdiction over property situated within its limits, even though owned by a nonresident; and in proceedings against such *property* jurisdiction to render a valid judgment *in rem* may be acquired by substituted service. (19 Ency. of Pl. & Pr. 612.) We have, then, but a single inquiry to answer: Is this proceeding now before us one *in personam?* If it is, the substituted service upon L. M. Strong was ineffectual for any purpose.

It was early sought to classify all judicial proceedings and all judgments as *in personam* or *in rem;* but the courts and text-writers have encountered extreme difficulty in attempting to formulate satisfactory definitions of these terms. A proceeding *in personam* is one, in form as well as in substance, between the

parties claiming the right, and that it is so *inter partes* appears from the record itself.   (2 Smith's Lead. Cas. 692; *Hine* v. *Hussey,* 45 Ala. 496.)   The judgment in such a proceeding binds the judgment debtor to some sort of personal liability.   As was early said by the supreme court of Massachusetts, such a judgment debtor "is not a passive party, but must be eminently active in the performance of any decree which may be made against him." (*Spurr* v. *Scoville,* 3 Cush. (Mass.) 578.)   After all, these are tests rather than definitions.   A leading definition of a judgment *in rem* is that given by Hall, J., in *Woodruff* v. *Taylor,* 20 Vt. 65: "A judgment *in rem* I understand to be an adjudication pronounced upon the status of some particular subject matter by a tribunal having competent authority for that purpose.   *   *   * A judgment *in rem* is founded on a proceeding instituted, not against the person as such, but against or upon the thing or subject matter itself, whose state or condition is to be determined. It is a proceeding to determine the state   or condition of the thing itself; and the judgment is a solemn declaration upon the status of the thing, and it *ipso facto* renders it what. it declares it to be."   This definition, however, is criticised as being too narrow in 2 Black on Judgments, section 792.   Of course, the judgment *in personam* binds only the parties and those in privity with them, while the judgment *in rem* binds all the world. (2 Black on Judgments, sec. 795.)   But it was early discovered that the cases would not all fall within either or both of these two classes, and a fairly successful attempt to dispel the confusion was made by adding a third class, designated proceedings *quasi in rem.*   Respecting this class, the   supreme court of the United States, in *Freeman* v. *Alderson,* 119 U. S. 187, 7 Sup. Ct. 166, 30 L. Ed. 372, said: "There is, however, a large class of cases which are not strictly actions *in rem,* but are frequently spoken of as actions *quasi in rem,* because, though brought against persons, they only seek to subject certain property of those persons to the discharge of the claims asserted.   Such are actions in which property of nonresidents is attached and held for the discharge of debts due by them to citizens of the state,

and actions for the enforcement of mortgages and other liens. Indeed, all proceedings having for their sole object the sale or other disposition of the property of the defendant to satisfy the demands of the plaintiff, are in a general way thus designated. But they differ, among other things, from actions which are strictly *in rem,* in that the interest of the defendant is alone sought to be affected, that citation to him is required, and that judgment therein is only conclusive between the parties."

There does not appear to be any serious controversy over the character of the action now under consideration. The dispute arises over the class into which it falls. The plaintiff, Adam Gassert, contends that of the 10,000 shares of the capital stock of the Berlin Mining and Development Company, conveyed to L. M. Strong by that company, the legal title to some of which is in L. M. Strong himself, the remainder standing in the name of A. J. Davis, trustee, he (Gassert) is the equitable owner of 5,000 shares, and as to such 5,000 shares L. M. Strong is a trustee *ex maleficio* for the plaintiff's benefit. The shares are alleged to be in the possession of Davis in Butte, and the purpose of the action is to establish and enforce the trust; that is, to secure a decree confirming the title in Gassert to the 5,000 shares, holding L. M. Strong and Davis as involuntary trustees thereof for the use and benefit of Gassert, and directing the transfer of the stock on the books of the company. While this action is brought against L. M. Strong personally, it does not seek to subject him to any personal liability, but its sole object is to subject the shares of stock, which are within the jurisdiction of the court, to the claim of plaintiff. In the execution of the decree which was rendered, L. M. Strong is not an active factor at all. Davis is directed to surrender up the 5,000 shares, and the Berlin Mining and Development Company is directed to make the proper transfer on the books of the company.

In *Boswell's Lessee* v. *Otis,* 9 How. (U. S.) 348, 13 L. Ed. 164. it is said: "Jurisdiction is acquired in one of two modes: First, as against the person of the defendant, by the service of process; or, secondly, by a procedure against the property of the defend-

ant within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment beyond the property in question. And it is immaterial whether the proceeding against the property be by an attachment or bill in chancery." (*Jennings* v. *Rocky Bar Gold Min. Co.*, 29 Wash. 726, 70 Pac. 136.)

. In *Heidritter* v. *Elizabeth Oil-Cloth Co.*, 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729, the court, in adding to what had theretofore been said upon the subject of jurisdiction, held that jurisdiction may be acquired by the mere bringing of the suit in which a claim is sought to be enforced against property situated within its territorial jurisdiction. In speaking of the method of drawing the property actually within the jurisdiction of the court, it is said: "This, as we have seen, is ordinarily done by actual seizure, but may be done by the mere bringing of the suit in which the claim is sought to be enforced, which may by law be equivalent to a seizure, being the open and public exercise of dominion over it for the purpose of the suit."

In *Galpin* v. *Page*, 3 Saw. 93, Fed. Cas. No. 5206, Mr. Justice Field said: "Suits *in rem* may be divided into four classes: First, those which are directed primarily against particular property, and are intended to dispose of it without reference to the title of individual claimants; second, those which are instituted to determine the status of particular property or persons; third, those which are, in form, personal suits, but which seek to subject property brought by existing lien or by attachment, or some collateral proceeding, under the control of the court, so as to give effect to the rights of the parties; and, fourth, those which seek to dispose of property, or relate to some interest therein, but which touch the property or interest only through the judgment recovered.   *   *   *   The third and fourth classes mentioned are not strictly proceedings *in rem*, but so far as they affect property in the state, they are treated as substantially such proceedings."

Finally in *Pennoyer* v. *Neff*, 95 U. S. 727, 24 L. Ed. 565, the court said: "Substituted service by publication, or in any other

authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. * * * In other words, such service may answer in all actions which are substantially *in rem."*

It has been quite generally held that an action to establish and enforce a trust in real estate is a proceeding *quasi in rem (Porter Land & Water Co.* v. *Baskin* (C. C.), 43 Fed. 323; *Reeves* v. *Pierce,* 64 Kan. 502, 67 Pac. 1108), and that "the courts of the state where the trust property is situate have jurisdiction over the enforcement and administration of the trust, so far as the property within their jurisdiction is concerned." (22 Ency. of Pl. & Pr. 21.) And, again, it is said that a court having jurisdiction of a trust estate does not lose it by reason of the trustee's absence from the state. (*Pennington* v. *Smith* (C. C.), 69 Fed. 188.)

The supreme court of California, in *Loaiza* v. *Superior Court,* 85 Cal. 11, 20 Am. St. Rep. 197, 24 Pac. 707, 9 L. R. A. 376, remarked: "If the state court has such power with reference to title to real estate held by a nonresident, how much the more will it have the same with reference to personal property situate within its jurisdiction. And the real and primary purpose of the action here under review is to determine the title and right to possession of the moneys and securities now within the jurisdiction of the court, secured from the plaintiffs in the action by fraud, under a contract which they were by law authorized to rescind and did rescind upon discovery of the fraud. Our statute says that in such a case the person who gains a thing by fraud is an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. (Civ. Code, sec. 2224.) This being so, it cannot be that the arm of equity is so short, or so weak, that the fraudulent trustee—he who has become trustee by fraud—by remaining beyond the jurisdiction of the court, can prevent the court from seizing upon the subject of the trust within its jurisdiction, and restoring it to the defrauded *cestui que trust."*

From the facts stated in the complaint in this action, it appears that these 5,000 shares of stock are charged with a trust, and it cannot be urged that our courts are powerless to enforce such trust, merely because one of the parties holding the legal title thereto is beyond the reach of the process of such courts. We think it sufficient to give the courts jurisdiction, that either the party or the subject matter of the trust is within the reach of the court. And this appears to be the holding of the courts. (*Felch* v. *Hooper,* 119 Mass. 52.)

To what class of actions, then, did section 637 above, before the amendment of 1907, apply? In the language of the supreme court, in *Roller* v. *Holly,* 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520, we think "it applies to all cases where, under recognized principles of law, suit may be instituted against nonresident defendants." That it was so intended we think is obvious from the general terms in which the section is couched; and, so far as we know, the only exception which can be made from the operation of its provisions is in actions *in personam,* strictly speaking. We are of the opinion that the present action is not such a one, but that it falls within the definition of a proceeding *quasi in rem,* and that substituted service upon L. M. Strong was sufficient to enable the district court to determine the relative rights of the parties to the stock in question, even though it would not be sufficient to warrant a personal judgment against L. M. Strong himself.

The record in this case covers 1630 pages of closely printed matter. We have carefully read it all. It is impossible within any reasonable compass to make even a synopsis of the testimony, and the recital of the substance of the evidence given would not serve any useful purpose. We are satisfied from the record that the defendants Morgan Strong, Maud Bond Strong, and L. M. Strong deliberately entered into a conspiracy fraudulently to obtain from the plaintiff, Adam Gassert, title to his interest in the Butte property, and that such conspiracy was successfully carried out. We think the complaint states a cause of ac-

tion, and that Morgan Strong and Maud Bond Strong were properly made parties defendant.

The transactions between Gassert and the Strongs covered a period of about four years, during which time Gassert was indebted to the Strongs in large sums of money advanced to him, and for which the Strongs had security upon Gassert's property in Park and Silver Bow counties, including the Butte property above mentioned. During most of this time Gassert was in dire financial straits, and was addicted to drink to such an extent that he was incapacitated to a very great degree from transacting business. He was constantly harassed by Morgan Strong, who was the principal acting factor, by Strong's refusal to give him a statement of their account, and by giving to him conflicting and meaningless statements. We are inclined to believe that the evidence is sufficient to justify the finding of the trial court that the indebtedness of $9,000, evidenced by the mortgage given by Adam Gassert's brother Charles to L. M. Strong soon after the settlement of June 17, 1905, and provision for which was made in that settlement, included all the indebtedness due from Adam Gassert to the Strongs, and included, also, the $700 cash paid to Gassert at the time of such settlement; that when the Charles Gassert mortgage was foreclosed by Strong, and the Park county property was sold and the indebtedness evidenced by it fully paid, Adam Gassert's obligations to the Strongs were fully discharged; that, accepting the statement of the witness Ira T. Wight as to what transpired on June 17, 1905, when the settlement was made, as correct, which we do, Gassert's transfer or release of his Butte property to L. M. Strong was nevertheless without consideration to him, and that his consent to the settlement was the result of (1) his weakened mental condition resulting from his habitual intemperance, which condition was not only known to the Strongs, but was contributed to by L. M. and Morgan Strong by their furnishing liquor to Gassert, and evidently with the design to secure an unfair advantage over him, (2) his misapprehension as to the status of his account with the Strongs at the

time of the settlement, (3) his ignorance of business generally, and (4) his ignorance of the value of the Butte property, which value was known to the Strongs and concealed from Gassert. But, furthermore, this Butte property had been covered by mortgages given by Gassert to Maud Bond Strong, which mortgages had been assigned to L. M. Strong; so that on June 17, 1905, when it came to make the settlement, L. M. Strong sustained as to Gassert the relation of mortgagor to mortgagee. With this conclusion before us, it is only necessary to refer to the rules of law applicable to such transactions as further justification for the decision of the trial court.

While there is some division of opinion among the courts, we think the weight of authority and the better rule is that, when once the relation of mortgagor and mortgagee is established, any subsequent arrangement by which the mortgagor's equity of redemption is sought to be transferred to the mortgagee will be viewed with distrust, and their original relationship of mortgagor and mortgagee will be held to exist notwithstanding the arrangement, unless it clearly appears that such arrangement was perfectly fair to the debtor and that no advantage was taken of him by reason of his indebtedness. Upon this subject the language of the supreme court of Wisconsin is particularly pertinent. It is said: "Where the relation of mortgagor and mortgagee of real estate has been once established between two parties, and it is claimed that by a subsequent deed of the premises by the mortgagor to the mortgagee the equity of redemption has been extinguished and the mortgagee has become the absolute owner of the premises, it must be clearly shown that the conveyance or release was voluntary on the part of the mortgagor, was based on an adequate consideration, was untainted by fraud, and that no advantage was taken of the debtor's necessities to drive a hard bargain. Such transactions will be closely scrutinized, and, if the proof be clear and satisfactory that the requirements above named have been observed, the transaction will be sustained, otherwise not. In doubtful cases, the courts

incline to hold that the mortgage relation still exists.'' (*Lynch* v. *Ryan,* 132 Wis. 271, 111 N. W. 707.)

The case of *Villa* v. *Rodriguez,* 12 Wall. 323, 20 L. Ed. 406, though not exactly parallel with the one at bar in the facts, still furnishes a very terse pronouncement of the rule applicable to transactions such as the one in question here. It is there said: ''The law upon the subject of the right to redeem, where the mortgagor has conveyed to the mortgagee the equity of redemption, is well settled. It is characterized by a jealous and salutary policy. Principles almost as stern are applied as those which govern where a sale of a *cestui que trust* to his trustee is drawn in question. To give validity to such a sale by a mortgagor, it must be shown that the conduct of the mortgagee was in all things fair and frank, and that he paid for the property what it was worth. He must hold out no delusive hopes; he must exercise no undue influence; he must take no advantage of the fears or poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. Where confidential relations and the means of oppression exist, the scrutiny is severer than in cases of a different character. The form of the instruments employed is immaterial. That the mortgagor knowingly surrendered and never intended to reclaim is of no consequence. If there is vice in the transaction, the law, while it will secure to the mortgagee his debt, with interest, will compel him to give back that which he has taken with unclean hands. Public policy, sound morals, and the protection due to those whose property is thus involved require that such should be the law.'' To the same effect is the text in 1 Bigelow on Frauds, 347. In other words, when Gassert had shown that the relationship of mortgagor and mortgagee existed between him and L. M. Strong at the time they approached the settlement of June 17th, when the contention is made that he transferred or relinquished to L. M. Strong his equity of redemption in his Butte property, a presumption at once arose against the *bona fides* of that transaction, and the burden was cast upon Strong to show that he paid Gassert what

the property was worth and took no unfair advantage of his superior position to obtain such conveyance or release.

In addition to the mortgages which Gassert had given to the Strongs, he had also executed and delivered to them certain deeds, absolute on their face, which purported to convey this Butte property to them. But we are satisfied from this record that such deeds were deeds of trust only, and were merely intended as further security for advances made by the Strongs. Under such circumstances, another relationship was created giving to the defendant L. M. Strong even a more commanding position than that of mortgagee, since, being invested with the legal title under deeds absolute on their face, he could convey it. This gave rise to the relationship of trustee and *cestui que trust*, and the rule of law applicable to transactions between such parties is even more stringent, if possible, than that applicable to transactions between mortgagor and mortgagee. It is very well expressed in the following language: "The trustee is in such a position of confidence and influence over the *cestui que trust* that the contract or bargain will either be void or he will be a constructive trustee, at the election of the *cestui que trust*, unless the trustee can show that the contract was entirely fair and advantageous to the *cestui que trust*. The presumption is against the transaction. * * * The general rule is that the trustee shall not take beneficially by gift or purchase from the *cestui que trust*, even although the supposed trustee and purchaser is a mere intermeddler and not a regularly recognized trustee. The question is not whether or not there is fraud in fact; the law stamps the purchase by the trustee as fraudulent *per se*, to remove all temptation to collusion and prevent the necessity of intricate inquiries in which evil would often escape detection, and the cost of which would be great. The law looks only to the facts of the relation and the purchase. * * * But there are exceptions to the rule, and a trustee may buy from the *cestui que trust*, provided there is a distinct and clear contract, ascertained after a jealous and scrupulous examination of all the circumstances, that the *cestui que trust* intended the trus-

tee to buy, and there is a fair consideration and no fraud, no concealment, no advantage taken by the trustee of information acquired by him in the character of trustee. The trustee must clear the transaction of every shadow of suspicion, and if he is an attorney, he must show that he gave his client, who sold to him, full information and disinterested advice. Lord Eldon said that he admitted that the exception was a difficult case to make out. And it may be said generally that it is difficult to find a case where such a transaction has been sustained. Any withholding of information, or ignorance of the facts or of his rights on the part of the *cestui,* or any inadequacy of price, will make such purchaser a constructive trustee." (Perry on Trusts, sec. 195; 1 Bigelow on Frauds, sec. 315.)

Of like tenor is the language employed by the American and English Encyclopedia of Law, where the authorities are collected. It is said: "Where a clear contract for the purchase of the trust property or a portion thereof by the trustee has been entered into between the trustee and the *cestui que trust,* the latter being *sui juris* and under no disability, by the operation of which the trustee has divested himself of his fiduciary relationship, the court will generally enforce the contract. But the court will subject the transaction to a jealous and searching investigation, and the contract will be set aside if they find any inequality in the bargain, or that to enforce it would be unconscionable, or should there appear to be inadequacy of price, or any concealment on the part of the trustee of information relative to estates, or fraud, or that the parties were not dealing at arm's-length, as they should upon termination of the relationship, but the trustee still retained influence over the *cestui que trust.*" (28 Am. & Eng. Ency. of Law, 1020.) And in this instance, again, when it appeared that L. M. Strong sustained the relationship of trustee as to Gassert, the burden was thereupon cast upon him to establish all the requirements necessary to the validity of his title to the trust property, which he claims to have acquired by the settlement of June 17th. (28 Am. & Eng. Ency. of Law, 1023.)

It is manifest to us from this record that neither L. M. nor Morgan Strong was dealing with Gassert in an honest and frank manner, but were fraudulently designing to secure his Butte property; that they took advantage of his necessities and of his weakened mental condition to drive a hard and unconscionable bargain; that they withheld from him facts as to the true value of the property; and, if by any system of computation it could be said that there was in fact any consideration whatever for the transfer or relinquishment by Gassert of his interest in the Butte property to the Strongs on June 17th, it was so grossly inadequate that a court of equity could not hesitate to hold it for naught. Under the rule prevailing in this state, it is incumbent upon the appellants to show that the evidence preponderates against the findings of the trial court, in order for this court to disturb such findings. (*Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Delmoe* v. *Long,* 35 Mont. 139, 88 Pac. 778.) In this we think the appellants have failed. On the contrary, there seems to be sufficient evidence to justify the trial court's findings.

We have examined all the specifications of error, but in our opinion the case was fairly tried and the correct conclusion reached.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied January 18, 1909.

Appeal taken to the supreme court of the United States, March 26, 1909.