DREELAND, RESPONDENT, *v.* PASCOE, APPELLANT.

(No. 2,677.)

(Submitted June 12, 1909.   Decided June 21, 1909.)

[102 Pac. 331.]

*Trusts—Enforcement—Complaint—Counterclaims—Burden     of Proof—Contract of Employment—Brokers—Evidence.*

Evidence—Erroneous Admission—Harmless Error.
    1.   Error in permitting plaintiff to testify as to what he meant by a letter written by him to defendant and introduced in evidence, was harmless, where the witness was unable to say what he meant and where his statement was more to his prejudice than to his advantage.

Trusts—Enforcement—Complaint.
    2.   A complaint which alleged that plaintiff and defendant were co-owners in a mining claim; that defendant sold the property and received therefor as part compensation 5,000 shares of the capital stock of a certain company; that a certificate calling for the entire 5,000 shares had been issued to defendant who had refused to transfer to plaintiff the number of shares belonging to him, stated a cause of action for the enforcement of a trust in the stock.

Same—Counterclaims—Burden of Proof.
    3.   Where, in a suit to enforce a trust in corporate stock, defendant admitted the allegations of the complaint, save that plaintiff was en-

titled to the stock, and urged as a defense a counterclaim constituting a lien on the stock, defendant had the burden of proof.

Brokers—Contract of Employment—Evidence.

4. Evidence held not to show that a letter, upon which defendant based his claim that a contract of employment had been entered into between himself and plaintiff whereby he was to sell a mining claim for a stipulated sum, did not bear the construction placed upon it by defendant.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by John Dreeland against George Pascoe. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

*Mr. L. P. Forestell,* for Appellant:

The complaint fails to state facts sufficient to constitute a cause of action in claim and delivery. It is not alleged that defendant wrongfully detained the property from him at the time of the commencement of the action; nor that at that time he was entitled to the possession of the property. (*Glass* v. *Basin & Bay State Min. Co.,* 31 Mont. 21, 77 Pac. 302, 303, and cases cited.) Neither does it state a cause of action in conversion. It does not state that the defendant converted the stock, or that plaintiff was entitled to its possession at the time of any alleged conversion. (*Glass* v. *Min. Co., supra; Harrington* v. *Stromberg-Mullins Co.,* 29 Mont. 157, 74 Pac. 413, 414.; Shinn on Replevin, secs. 428, 441, 443 and cases cited; *Raymond* v. *Blancgrass,* 36 Mont. 449, 93 Pac. 648, 650, 15 L. R. A. (n. s.) 976; *Balch* v. *Jones,* 61 Cal. 234-236.) "The rule of law that indivisible personal property owned by two or more joint tenants or tenants in common cannot be replevied by one or more of such owners from the other or others is quite uniform, and almost without exception." (*Hill* v. *Seager,* 3 Utah, 379, 3 Pac. 545, 11 Ency. of Pl. & Pr. 762, 765; 30 Cyc. 193.) There is no allegation sufficient to maintain partition. There is nothing to show whether plaintiff's interest in the certificate is divided or undivided.

The decision of the court does not support the judgment, and a failure to find upon a material issue is ground for a new trial.

(Spelling on New Trial and Appellate Practice, sec. 592; *Hamilton* v. *Murray*, 29 Mont. 80, 74 Pac. 75; *Holt* v. *Van Eps*, 1 Dak. 206, 46 N. W. 689; *Patterson* v. *United States*, 2 Wheat. 221, 4 L. Ed. 224.) The question may also be presented upon an appeal from the judgment. (*Id.*)

*Messrs. Kirk & Kirk,* for Respondent.

This is plainly an action to enforce a trust arising out of defendant's inequitable conduct. Defendant, when he sold the claim and received consideration, a part of which belonged to defendant, became his trustee and bound to account to him therefor. (Revised Codes, secs. 5365, 5372.) Trusts of personalty will be enforced by a court of equity. (*Kimball et al.* v. *Morton*, 5 N. J. Eq. 26, 43 Am. Dec. 621; 3 Pomeroy's Equity Jurisprudence, sec. 1045; 6 *Id.*, sec. 749; 4 *Id.*, sec. 1402; see, also, *Cowles* v. *Whitman*, 10 Conn. 121, 25 Am. Dec. 60.)

The court's finding is a general one for plaintiff, and as such is ample and sufficient. No request was made for findings by the defendant, and, therefore, none were necessary, and the court's failure to make specific findings is not a ground for reversal. (Revised Codes, sec. 6766; *Gallagher* v. *Cornelius*, 23 Mont. 27, 57 Pac. 447; *Yellowstone Bank* v. *Gagnon*, 25 Mont. 271, 64 Pac. 664.)

MR. JUSTICE SMITH delivered the opinion of the court.

This cause was tried to the district court without a jury. The court entered judgment in favor of the plaintiff, in accordance with the prayer of the complaint, and from that judgment, and an order denying a new trial, the defendant has appealed.

The complaint alleges: "(1) That plaintiff and defendant were co-owners of the Col. Sellers lode claim in the following proportions, to-wit, plaintiff owning a three-fourths interest, and the defendant a one-fourth interest; (2) that on or about the eleventh day of April, 1906, defendant, for himself, and

as attorney in fact of plaintiff, sold said mining claim to the Butte-Milwaukee Copper Company, receiving as part of the compensation therefor 5,000 shares of the capital stock of said company, to be taken by said owners according to their respective interests in said mine; (3) that a certificate calling for the entire 5,000 shares of stock was issued to said defendant; (4) that plaintiff is the owner of and entitled to the transfer to him of 3,750 shares of said stock; (5) that on or about the fourth day of April, 1907, plaintiff demanded of defendant the transfer to him of said stock, but that defendant refused, and still refuses, so to do. Wherefore plaintiff prays judgment and decree of this court that plaintiff be adjudged and decreed to be the owner of three-fourths of said stock represented by said certificate, and that defendant be declared trustee of the plaintiff for said stock and be directed to cause said stock to be transferred to said plaintiff."

The answer admits the allegations of paragraphs 1, 2, 3, and 5 of the complaint, and denies the matters set forth in paragraph 4 thereof. The defendant then proceeds to allege affirmatively, and as a counterclaim to plaintiff's cause of action: "That heretofore, to-wit, on or about the eleventh day of April, 1906, plaintiff and defendant made and entered into a certain agreement, wherein and whereby plaintiff made, constituted, and appointed defendant his agent for the purpose of selling plaintiff's interest in the said Col. Sellers lode claim, and wherein and whereby it was agreed that plaintiff should pay to defendant, as compensation for his services in selling the said interest of said plaintiff in said claim, five per cent of the purchase price for said interest of plaintiff, together with the sum of $100 in addition thereto, for expenses; that thereafter, on or about the said eleventh day of April, 1906, defendant succeeded in selling said interest of plaintiff in said claim, for the sum of $30,000, of which said sum $26,250 was paid in cash to plaintiff, and the balance was paid in stock of the Butte-Milwaukee Copper Company, to-wit, 3,750 shares of the stock of said company, which said stock is now in possession of this defendant; that defendant

has fully completed and performed all of the terms and conditions of said agreement by him to be performed; that, under and by virtue of the said agreement, there became due and owing from plaintiff to defendant for said services five per cent of said sum of $30,000, and, in addition thereto, the sum of $100, for expenses, amounting in all to the sum of $1,600, no part of which has ever been paid to defendant by plaintiff, save and except the sum of $50; that defendant now has in his possession, as part of the purchase price of the interest of plaintiff in the said mining claim, the said 3,750 shares of the capital stock of the Butte-Milwaukee Copper Company; that said defendant claims a lien upon said stock as security for the payment of said commission and compensation, agreed upon between plaintiff and defendant and due him as aforesaid, for his said services; and that said defendant is now holding the said 3,750 shares of stock under and by virtue of his said lien."

The plaintiff by replication denied that he agreed to pay any sum whatsoever for such services. He admits, however, that he paid the defendant $50, which he says was "simply in appreciation of services rendered by defendant, and not in compliance with, or in recognition of, any alleged agreement or contract between them."

The defendant testified as follows: "There was an agreement as to my selling this claim. That agreement is in the form of a business letter, in several letters." Defendant then introduced in evidence the following letter:

"Moyie, April 18, 1906.

"Geo. Pascoe, Esq., Butte, Mont.

"Dear George: I received your letters and note of agreement last evening and would say you done remarkable well so far with ground. With regards money, if you pay one-half to family and five per cent. to you I guess I would come out about even. Pay money into Davis' bank to my credit and deduct one hundred dollars from same for your expenses. I think that is about square; if not, you can let me know. For the stock business, I hope I will get over to Butte before that time arrives.

I assure you the family will get their portion of any money paid. I am pleased with things if you are.  I remain,

"Sincerely yours,

"JOHN DREELAND."

The defendant also testified: "I looked after Mr. Dreeland's interest in this mining claim and paid the taxes every year, and I made deals here.  I made a sale of the property to the Butte & Milwaukee for $35,000 and 5,000 shares of the stock.  I deposited Mr. Dreeland's money in the bank.  The last payment was credited to his wife and himself.  The first $5,000 he was here when it was paid.  The check was drawn by me, and we both went to the bank, and Mr. Dreeland got his $3,750, and I got the rest of the $5,000.  Mr. Dreeland received the three-fourths of the purchase price.  The stock was made out in my name because Mr. Dreeland, in the first place, would not take any stock, and I said I would take it, and it was deposited in the bank in my name.  Then afterward Mr. Dreeland said he would share with me in the stock.  Mr. Dreeland paid me $50 of the money which is referred to in this letter of the 18th of April.  That was paid to pay part of the expenses.  There has been no part of the five per cent paid to me on that.  I paid $9.89 in taxes on this property.  As to the general character of the work which I did, I attended to working up this deal, and I went to Walkerville several times to get papers signed, and I sent them to Mr. Dreeland.  When I gave Mr. Dreeland his certificate of $22,500, I said: 'There is 5,000 shares of stock here in my name.  What are you going to do with that?'  And he said, 'Three-fourths belongs to me and one-fourth to you.'  and I said, 'John, there is some consideration about this thing,' and he said, 'That is all there is about it.'  I have no claim on this stock except my five per cent.  Mr. Dreeland and I had been the owners of the Col. Sellers lode claim for seventeen or eighteen years.  My other expenses were about $4.50.  The last payment was a straight $30,000 payment.  I signed the check and told them to place to Mr. Dreeland's credit his proportion, $22,500, and the $7,500 I took myself.  I told them to place Mr.

Dreeland's portion to the credit of Mr. and Mrs. Dreeland. I base my claim to this commission upon this letter of April 18. I understood from that letter that I was to hold out five per cent and $100 for expenses besides. John volunteered that himself. I never charged him anything. I don't think I said anything about five per cent in the letter I wrote him which called for this answer. I know I mentioned about his wife; but I don't think I said he ought to pay me five per cent for making this deal. I will say positively that I did not ask for five per cent. I did not ask him for a cent. I did not say I ought to get five per cent."·

The plaintiff was sworn in his own behalf, and was asked what he meant by the letter of April 18. This question was objected to, and the court overruled the objection. The defendant excepted to the ruling of the court, and now assigns the same as error; but we are unable to conclude that any error was committed in this regard, for the reason that Dreeland was unable to say what he meant by the letter. He made a long, rambling, involved statement, which was more to his prejudice than to his advantage. He did testify, however, categorically that the defendant wrote him a letter in which he asked for five per cent of the purchase price, and that the letter of April 18 was in answer to this demand. It appears from the testimony that the defendant was somewhat solicitous in behalf of plaintiff's wife; he fearing that she would not get any part of the purchase price of the Dreeland interest in the mine. Plaintiff also testified that, when he paid the $50 to defendant, the latter said it was more than satisfactory.

The judge of the district court filed the following written decision, which may be construed as the findings of fact and conclusions of law in the case, in view of the fact that no demand was made for any more definite findings: "In this action heretofore tried by the court, the court finds for the plaintiff, and concludes therefrom that he is entitled to recover from defendant as prayed in the complaint. I am of the opinion the remark in plaintiff's letter which defendant claims amounts to a promise

to pay him (defendant) a five per cent commission on the sale price of plaintiff's interest in the claim owned by them in common was called forth by a request therefor in some prior letter of defendant's, and is intended as an ironical or sarcastic reply thereto, and not as a promise to pay five per cent. It is immediately followed by an express direction as to the deposit of the money, an express allowance for expenses, and an assurance that plaintiff will himself discharge his obligations to his family. The remark relied on is only hypothetical at most, and alone, or in connection with the context, imports no promise or offer. Geo. M. Bourquin, Judge.''

The first contention of the defendant is that the complaint does not state facts sufficient to constitute a cause of action. We think there is no merit in this contention. It is based upon the hypothesis that the action is either in claim and delivery, or in conversion, or for partition of the certificate of stock. It is quite clear to us that the action is brought to enforce a trust in the stock, and this appears to have been the theory upon which the action was tried in the court below. (See *Gassert* v. *Strong*, 38 Mont. 18, 98 Pac. 497.) The objection that the complaint does not state a cause of action is urged in this court for the first time and is not well taken.

At the trial the plaintiff waived any objection that the matters pleaded in the answer were not a proper subject of counterclaim, so that question is not before us.

The second assignment of error is to the effect that the court erred in holding that the burden of proof was on the defendant. We think the burden was on the defendant. He admitted all the allegations of the complaint, save that the plaintiff was entitled to receive the stock, and urged as a defense to the action his counterclaim for $1,550, the amount of which he maintained was a lien upon the stock. Under these circumstances, we think the burden of proof was upon him; but, at any rate, as the cause was one in equity and was tried to the court sitting without a jury, there could be, probably, no prejudice to the defendant if the court erred in this ruling.

The district court was of opinion that the language employed by the plaintiff in his letter of April 18, was a bit of sarcasm on his part. The court saw the witness upon the stand, and may have been justified in this conclusion; but, however that may be, in directing judgment for the plaintiff, the presumption is that the court found that his version of the transaction was correct. We have carefully considered the letter of April 18, and find therein nothing which would have warranted the district court in holding that there was a contract between these parties. The defendant says positively that he bases his claim of contract upon the language employed in this letter. In view of all of the facts disclosed by the record, including the conduct of the parties after April 18, we are inclined to doubt whether the defendant considered that any contract existed between them. The claim of contract appears to have been an afterthought. The parties had been associated together for seventeen or eighteen years in the ownership of the Col. Sellers lode. Defendant was interested in the disposition of the same; and, aside from his present contention, there is nothing in his testimony to show that he intended to claim anything for his services prior to the time when plaintiff demanded his share of the stock.

We hold that there was no contract between the parties, and the judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.