(November 29, 1918.)

THORAL JOHANSEN, Appellant, v. EUGENE LOONEY and JAMES H. OAKES, Respondents.

[176 Pac. 778.]

DEED AS MORTGAGE — INADEQUACY OF CONSIDERATION — EQUITY OF REDEMPTION—BURDEN OF PROOF—MOTION FOR NONSUIT—DEFENSES—LACHES—ESTOPPEL—BONA FIDE PURCHASER.

1. Where a mortgagor parts with his equity of redemption in favor of the mortgagee and the transaction is thereafter called in question, it must be shown, in order to uphold it, that the agreement was fairly entered into between the parties thereto, for a consideration not grossly inadequate in view of all the circumstances.

2. In this case three facts must be considered as admitted by the motion for nonsuit: First, the relation of mortgagor and mortgagee between appellant and respondent Looney; second, that a deed, absolute in form, was taken by the mortgagee, conveying to him the property encumbered by the mortgage; third, that such property was conveyed for an inadequate consideration.

3. Where the legal effect of an absolute conveyance from mortgagor to mortgagee is called in question in an action by the mortgagor, and the latter shows the existence of that relation, the subsequent execution of an instrument purporting to be an absolute conveyance, and the inadequacy of the consideration therefor, he has made a *prima facie* case and a motion for nonsuit should be denied.

4. In an action at law the defense of laches is not available, where questions arise as to loss of legal rights through lapse of time. In such cases only statutes of limitations of actions apply.

5. The defense of estoppel is not available to a holder of title as against one contesting his right, where such title holder was at all times in possession of full knowledge of the nature of his title and the facts relating to the manner of its acquisition.

6. The defense of *bona fide* purchaser is not available to a holder of title who relies upon a motion for nonsuit, as such defense would become proper only when he is put upon his proof.

[As to effect of lapse of time upon right to have a deed declared a mortgage, see note in Ann. Cas. 1914B, 354.]

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Carl A. Davis, Judge.

Action to set aside a deed purporting to convey equity of redemption to mortgagee and to recover value of certain real property after satisfaction of mortgage debt and interest. From judgment of nonsuit and dismissal, plaintiff appeals. *Reversed.*

Alfred A. Fraser and S. L. Tipton, for Appellant.

From the record it was for the jury to pass upon the question as to whether or not the defendant paid for the property what it was worth and took no advantage of the plaintiff by reason of defendant's superior position. To give validity to such a sale by a mortgagor, it must be shown that the conduct of the mortgagee was in all things fair and frank. He must take no advantage of the fears or the poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. (*Alexander v. Rodriguez (Villa v. Rodriguez)*, 12 Wall. (U. S.) 323; 20 L. ed. 406; Bigelow on Fraud, pp. 259–261; *Gassert v. Strong*, 38 Mont. 18, 98 Pac. 497, 503; *Lewis v. Wells*, 85 Fed. 896; *Peugh v. Davis*, 96 U. S. 332, 24 L. ed. 775; *Bradbury v. Davenport*, 114 Cal. 593, 55 Am. St. 92, 46 Pac. 1062.)

The burden is upon the creditor to show that the right of redemption was given up deliberately and for an adequate consideration. (Jones on Mortgages, sec. 251; *Keeline v. Clark*, 132 Iowa, 360, 106 N. W. 257.)

Whenever the relation of mortgagor and mortgagee is once shown to exist the court views with distrust and disfavor any arrangement between them by which it is proposed to transfer the equity of redemption to the mortgagee, and the parties will be held to their original relations, unless the transaction appears to be perfectly fair and no advantage is taken by the mortgagee of the mortgagor by reason of his encumbrance. (*Russell v. Southard*, 12 How. (U. S.) 139, 13 L. ed. 927; *Stoutz v. Rouse*, 84 Ala. 309, 4 So. 170; *West v. Reed*, 55 Ill. 242; *Bradbury v. Davenport*, 114 Cal. 593, 55 Am. St. 92, 100, 46 Pac. 1062; *Shillaber v. Robinson*, 97 U. S. 68, 24

Argument for Respondents.

L. ed. 967; *Coates v. Marsden,* 142 Wis. 106, 124 N. W. 1057; *Miller v. Smith,* 20 N. D. 96, 126 N. W. 499; *Moeller v. Moore,* 80 Wis. 434, 50 N. W. 396; *Fort v. Colby,* 165 Iowa, 95, 144 N. W. 393; 3 Pomeroy's Eq., 3d ed., sec. 1193, note 1.)

"The grantee in an absolute deed, which is in fact a mortgage, may have a judgment for a redemption in money against the grantee in case the latter has conveyed the land to a *bona fide* purchaser so that it cannot be reached, and although an action against the grantee to recover for money had and received would be barred by the statute of limitations." (Jones on Equity, sec. 1060A; *May v. LeClaire,* 78 U. S. 217, 20 L. ed. 50.)

A plea of laches is only available in an equitable action; actions at law being governed solely by the statute of limitations. (*Wilson v. Nichols,* 72 Conn. 173, 43 Atl. 1052; *Ormsby v. Vermont Copper Min. Co.,* 56 N. Y. 623.)

Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no equitable estoppel. (*Brant v. Virginia Coal & I. Co.,* 93 U. S. 326, 23 L. ed. 927; *Steel v. St. Louis Smelting & Ref. Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. ed. 226; *Lux v. Haggin,* 69 Cal. 255, 4 Pac. 919, 10 Pac. 674; *New York Rubber Co. v. Rothery,* 107 N. Y. 310, 1 Am. St. 822, 14 N. E. 269; *Fort v. Colby,* 165 Iowa, 95, 144 N. W. 393; Pomeroy's Eq. Jur., 2d ed., sec. 803; *Atkinson v. Plum,* 50 W. Va. 104, 58 L. R. A. 788, 40 S. E. 587.)

C. C. Cavanah and Wyman & Wyman, for Respondents.

Burden of proof was on plaintiff to show that the deed was other than it purports to be. (*Barton v. Bank of New South Wales,* 15 App. Cas. 379; *Howland v. Blake,* 97 U. S. 624, 628, 24 L. ed. 1027, 1029; *Miller v. Smith,* 20 N. D. 96, 126 N. W. 499; *Jasper v. Hazen,* 4 N. D. 1, 58 N. W. 454, 23 L. R. A. 58; *Turner v. Kerr,* 44 Mo. 429; *Helm v. Boyd,* 124 Ill. 370, 16 N. E. 85; *Woods v. Jensen,* 130 Cal. 200, 62 Pac. 473; *Hawkins v. Elston,* 58 Colo. 400, 146 Pac. 254; *Beverly v. Davis,* 79 Wash. 537, 140 Pac. 696; *Motley's Admr. v. Car-*

*stairs etc. Co.,* 114 Va. 429, 76 S. E. 948; *Cadman v. Peter,* 118 U. S. 73, 6 Sup. Ct. 957, 30 L. ed. 78.)

In absence of fraud, inadequacy of price is not sufficient to convert deed into mortgage or entitle plaintiff to recover. (*West v. Hendrix,* 28 Ala. 226; *Rodgers v. Burt,* 157 Ala. 91, 47 So. 226; *Bridges v. Linder,* 60 Iowa, 190, 14 N. W. 217; *Forester v. Van Auken,* 12 N. D. 175, 96 N. W. 301; *Pierce v. Traver,* 13 Nev. 526; *McGuin v. Lee,* 10 N. D. 160, 86 N. W. 714; *Davidson v. Little,* 22 Pa. St. 245, 60 Am. Dec. 81; *Harris v. Tyson,* 24 Pa. St. 347, 64 Am. Dec. 661; *Hemingway v. Coleman,* 49 Conn. 390, 44 Am. Rep. 243; *Williams v. Powell,* 66 Ala. 20, 41 Am. Rep. 742.)

The evidence discloses that the deed of April 3, 1907, was made voluntarily and was intended by the parties to be an absolute conveyance. (*Stall v. Jones,* 47 Neb. 706, 66 N. W. 653; *Becker v. Howard,* 75 Wis. 415, 44 N. W. 755; *Neeson v. Smith,* 47 Wash. 386, 92 Pac. 131; *Woodworth v. Carman,* 43 Iowa, 504; *Cook v. Lion Fire Ins. Co.,* 67 Cal. 368, 7 Pac. 784.)

Laches will defeat recovery. (*Ryan v. Woodin,* 9 Ida. 525, 75 Pac. 261; *McCabe v. Mathews,* 40 Fed. 338; *City of Leavenworth v. Douglass,* 59 Kan. 416, 53 Pac. 123; *Wilson v. Wilson,* 41 Or. 459, 69 Pac. 923; *Kleinclaus v. Dutard,* 147 Cal. 245, 81 Pac. 516; *Wilson v. Linder,* 21 Ida. 576, 587, Ann. Cas. 1913E, 148, 123 Pac. 487, 42 L. R. A., N. S., 242; *Coyle v. Lamb,* 123 Cal. 264, 55 Pac. 901.)

BUDGE, C. J.—This case was here on a former appeal to determine whether appellant was entitled to a jury trial. It was held that he was. (*Johansen v. Looney,* 30 Ida. 123, 163 Pac. 303.) The cause was remanded for trial. After appellant had introduced his evidence the court granted a nonsuit and dismissed the action. This appeal is from the judgment of dismissal.

The evidence on behalf of appellant was in substance as follows: Appellant testified that he was 82 years of age and a native of Norway; that he came to this country in 1864 and to Idaho in 1872, and in 1882 he acquired title to 442 acres

of land, of which approximately 300 acres were level and the balance rolling or hill land; that he cleared, irrigated and cropped about 300 acres; that he first met Looney in 1905, at which time he obtained from him a loan on his ranch, Looney refusing to take a mortgage and insisting upon a deed absolute in form and a bill of sale to certain personal property, to which appellant agreed; that a deed to the land and a bill of sale of the cattle and horses were executed and Looney thereupon gave a contract to reconvey and loaned appellant $6,500, of which $6,200 was used in redeeming appellant's ranch from foreclosure sale under a mortgage held by the Union Central Life Insurance Company; that he told Looney the ranch was worth about $16,000; that appellant returned to the ranch, where he has resided ever since; and that in 1907 he gave a second deed to Looney, who offered to give the stock back for a deed to the ranch, and took offense because appellant told him the bill of sale of the cattle was not valid.

Marcellus testified that he had known appellant for 16 or 17 years; that in 1899 he made him a loan on the ranch, of which about 300 acres were level and under water; that he next saw the ranch in 1905, where he went in company with Looney, with the view of making a loan; that Looney preferred having a deed so that he would not have to foreclose if the debt were not paid; and that the bottom land was worth $55 to $60 per acre, and the grazing land from $10 to $15 per acre. On cross-examination, he testified that he did not go to the head of the ditch; that the original loan to Johansen in 1899 was $4000, and by 1905 there was $6,500 due; and that the notes bore interest at the rate of 10 per cent per annum.

Spofford testified that he was acquainted with the land; that over 200 acres were irrigated lands and the rest rolling; and that in 1905 to 1907 it was worth about $60 per acre for the low land and from $18 to $25 for the high land.

Neal testified that he first saw the ranch in 1903, and estimated it to be worth from $16,000 to $18,000 on September 14, 1905, and from $17,000 to $20,000 on April 3, 1907.

It was stipulated that of the five notes referred to in the contract to reconvey, given by Looney to Johansen at the time the first deed was executed, the first was for $500, and the remaining four for $1,500 each, falling due one each year for five years and bearing interest at 10 per cent per annum, payable annually; and that the notes were canceled and returned to Johansen on or about April 3, 1907, as a part of the transaction at the delivery of the second, or quitclaim, deed executed on that date.

Looney, on cross-examination under the statute, testified that in selling the land to Dewey no separate valuation was placed on the Connaughton lands, amounting to 107 acres, which he had purchased subsequent to acquiring the Johansen land; that the $38,000 received, from Dewey included the lands of Johansen and Connaughton, and livestock and everything that was turned to him; that one-half of the $38,000 was received by Looney, one-fourth was paid to respondent Oakes and one-fourth to Oakes' brother; and that the railway company paid them $2,250 for a right of way over the land in 1910. On re-examination he testified that the $38,000 was paid for the land, improvements, a lot of horses, a lot of cattle, hogs, grain, farm implements, hay, water right, and a ditch constructed by them in 1909; and that they had built new fences, a new house and barn, and plowed and leveled the ranch for four years and put 170 acres in alfalfa.

It is alleged in the complaint, and admitted in the answer, that the appellant was indebted to various parties and had no other means of support or resources with which to pay the debt, other than the property in question. The record further discloses that Looney, before canceling the notes and returning them and the personal property to appellant, and before he took the quitclaim deed on April 3, 1907, had paid off a chattel mortgage to C. W. Moore, on the personal property, in the sum of $400 and accrued interest.

The motion for nonsuit, the granting of which is assigned as error, was placed upon the grounds that it appears from the testimony of appellant that respondent Oakes was not connected with and had no knowledge of any of the transac-

tions alleged in the complaint; and with respect to the deed executed April 3, 1907, that when the first note became due appellant neglected to pay either the note or any interest, neglected to comply with the contract to repurchase, and.executed and delivered to Looney a quitclaim deed conveying the premises for the consideration of $8,000, whereupon Looney canceled and returned all of the notes and surrendered all of the livestock to appellant, free and clear of the chattel mortgage above referred to; that Looney was given possession of the land and has placed valuable improvements thereon; that at the time of the execution of the quitclaim deed there was no continuing or subsisting indebtedness existing between appellant and Looney; that appellant had failed to prove any false or other representations alleged in the complaint to have been made by Looney, and that appellant had been guilty of laches, and is estopped from asserting any right or interest whatever in the proceeds of the premises.

It is conceded that the deed, with a contract to repurchase, executed under date of September 14, 1905, was a mortgage, and we think it is also true that the bill of sale of the personal property given by appellant to Looney, as between the parties, was a chattel mortgage.

We now come to a consideration of the quitclaim deed executed by the appellant and delivered to respondent Looney, under date of April 3, 1907. It is contended by appellant that the instrument, while in form a deed absolute, was procured by oppression and undue influence and was not voluntarily entered into. Three facts, for the purposes of the motion for nonsuit, must be considered as established: First, the relationship of mortgagor and mortgagee; second, that a deed absolute in form was taken; and, third, that the property was conveyed for an inadequate consideration. The rule would seem to be established by the weight of authority that when the relationship of mortgagor and mortgagee is shown and a deed absolute in form, conveying the property, has been executed for an inadequate consideration, the burden shifts to the grantee to show that he took no advantage of the

grantor by reason of his superior position, to obtain the conveyance.

While it is held in some cases that mere inadequacy of consideration, although gross, will not vitiate a transfer of mortgaged property from mortgagor to mortgagee where there is no showing of fraud or that the mortgagee took advantage of his position, consciously or unconsciously (*West v. Reed,* 55 Ill. 242; *Rodgers v. Burt,* 157 Ala. 91, 47 So. 226; *Bridges v. Linder,* 60 Iowa, 190, 14 N. W. 217; *McGuin v. Lee,* 10 N. D. 160, 86 N. W. 714), many authorities go to the extent of holding, inferentially at least, that gross inadequacy of consideration alone is sufficient to deprive the transaction of its binding influence. (*Fort v. Colby,* 165 Iowa, 95, 144 N. W. 393; *Peugh v. Davis,* 96 U. S. 332, 24 L. ed. 775; *Stoutz v. Rouse,* 84 Ala. 309, 4 So. 170; *Bradbury v. Davenport,* 114 Cal. 593, 55 Am. St. 92, 46 Pac. 1062; 27 Cyc. 1374.) Agreements of this character are always to be closely scrutinized. (*Alexander v. Rodriguez (Villa v. Rodriguez),* 12 Wall. (U. S.) 323, 20 L. ed. 406; *Gassert v. Strong,* 38 Mont. 18, 98 Pac. 497; *Peugh v. Davis, supra; Russell v. Southard,* 12 How. (U. S.) 139, 13 L. ed. 927; *Moeller v. Moore,* 80 Wis. 434, 50 N. W. 396; *Fort v. Colby, supra.*) And some authorities go so far as to hold that when it is shown that the relation of mortgagor and mortgagee exists the burden is on the mortgagee to show that he paid what the property was worth and took no unfair advantage of his superior position to obtain the conveyance. (*Jones v. Franks,* 33 Kan. 497, 6 Pac. 789; *Gassert v. Strong, supra; Fort v. Colby, supra; Liskey v. Snyder,* 56 W. Va. 610, 49 S. E. 515.) Notwithstanding some apparent conflict in the above authorities, the holding is general that the transaction must be fairly made for a consideration not grossly inadequate, and that any fraudulent or oppressive conduct on the part of the mortgagee, is sufficient to annul the absolute character of the transfer. (*Alexander v. Rodriguez, Gassert v. Strong, Stoutz v. Rouse, Russell v. Southard, Bradbury v. Davenport, Fort v. Colby* and *Liskey v. Snyder, supra; Keeline v. Clark,* 132 Iowa, 360, 106 N. W. 257.) It is also held that a showing of gross inadequacy of

consideration raises a presumption of constructive fraud, imposition, oppression and undue influence, and places the burden on the mortgagee to show that the transaction between the parties was fair and voluntarily entered into. (*Fort v. Colby, Moeller v. Moore, Peugh v. Davis,* and *Russell v. Southard, supra.* See, also, *Lewis v. Wells,* 85 Fed. 896; *Bradbury v. Davenport,* 114 Cal. 593, 55 Am. St. 92, 46 Pac. 1062, and *Simpson v. First National Bank,* 93 Fed. 309, 35 C. C. A. 306.)

Appellant in effect seeks to ratify the sale to Dewey, and demands the excess, over and above the amount of his loan, plus interest. In order to sustain this theory, it is necessary for him to establish that the deed of April 3, 1907, is not what it purported to be, a conveyance to the grantee of the fee simple title, or what is commonly called the equity of redemption. (*Shaner v. Rathdrum State Bank,* 29 Ida. 576, 161 Pac. 90.) The burden of proof in the first instance rests upon him to establish the relationship of mortgagor and mortgagee, the execution of the quitclaim deed of April 3, 1907, and the inadequacy of the consideration. When these facts are shown, there is sufficient evidence to establish a *prima facie* case, and it would then devolve upon the mortgagee to show that there was no misrepresentation, coercion, oppression or undue influence, and that the transaction between the parties was fair and voluntarily entered into.

It is next urged by respondents that appellant is not entitled to recover by reason of his laches, and that he is estopped by his conduct from asserting any right or title in and to the premises or the proceeds from the sale thereof. The writer of this opinion alone entertained the view that both of these defenses could successfully be urged in an action at law, and there are authorities which would seem to support this view (Pomeroy, Remedies and Remedial Rights, 4th ed., sec. 30), and that the doctrine of laches rests not alone upon the lapse of time, but upon the inequity of permitting the claim to be enforced (*Stevens et al. v. Grand Central Min. Co. et al.,* 133 Fed. 28, 67 C. C. A. 284; *Galliher v. Cadwell,* 145 U. S. 368, 12 Sup. Ct. 873, 36 L. ed. 738;

*Ward v. Sherman,* 192 U. S. 168, 48 L. ed. 391, 24 Sup. Ct. 227), that laches is analogous to estoppel *in pais* (16 Cyc. 680, note 6; *Cannon v. Sanford,* 20 Mo. App. 590; *Hodges v. New England Screw Co.,* 3 R. I. 9; *Graham v. Birkenhead etc. R. Co.,* 2 Hall & T. 450, 14 Jur. 494, 20 L. J. Ch. 445, 2 Macn. & G. 146, 6 Eng. L. & Eq. 132, 48 Eng. Ch. 114), and that the doctrine of equitable estoppel is as effective in actions at law as in suits in equity. (1 Street on Federal Equity Practice, sec. 82.) There are authorities which hold, however, both under the code practice as well as at common law, that in an action at law the defense of laches cannot be invoked. This being such an action, the statute of limitations rather than the doctrine of laches would apply. (*Broadway National Bank v. Baker,* 176 Mass. 294, 57 N. E. 603.)

In *Motley's Admr. et al. v. Carstairs, McCall & Co.,* 114 Va. 429, 76 S. E. 948, referring to the question of laches, the court said:

"The appellants contend that inasmuch as this is a suit in equity, which alone has jurisdiction to enforce a judgment alleged to be a lien upon real estate, they have the right to invoke and rely upon the doctrine of laches. They insist that the appellees have been guilty of laches, in this, that their judgment was recovered in 1886, and yet this suit was not brought to enforce it until 1909, after Motley, the judgment debtor, had conveyed the land in question to J. B. Price.

"This position is not tenable. The record distinctly shows that the appellees did not delay endeavoring to make their judgment out of Motley; on the contrary, it is not denied that they issued execution upon the judgment from time to time, even as late as 1904, thus showing that they had no intention of abandoning their claim, of which appellants had notice. But apart from this the doctrine of laches is not applicable to this case. The appellees are not enforcing an equitable but a legal right, which is not subject to the equitable doctrine of laches. (*Flanary v. Kane,* 102 Va. 547, 559, 46 S. E. 312, 681; *Price v. Thrash,* 30 Gratt. (71 Va.) 515.)"

In *Ormsby v. Vermont Copper Min. Co.,* 56 N. Y. 623, "the judge submitted the case to the jury substantially upon the proposition, that if Durand and Gilbert knew of the action of the stockholders' meetings and of the assessment, and assented to it or acquiesced in it for a long period of time, without objection, and neglected to pay, plaintiff was not entitled to recover, that the great lapse of time was an element to be considered on the question of assent or acquiescence. *Held,* error; that the mere neglect under the circumstances to take affirmative action for a time, short of that prescribed by the statute of limitations, could not affect the parties' rights; that the sale of the stock being invalid a cause of action then arose; and the delay in enforcing redress, except as it refers to the statutory limitation, was immaterial."

In the instant case, estoppel cannot be urged for the following reasons: First, should it be found that the deed was obtained by misrepresentation or coercion, no equitable defense could be interposed. If not so procured, no equitable defense would be necessary. It must be conceded that Looney was at all times in possession of the facts bearing upon and the nature of his title. He is, therefore, not in a position to plead the doctrine of estoppel. The rule seems to be thoroughly established that estoppel cannot be invoked by one who was acquainted with the true character of his own title. In order to claim the benefit of estoppel, he must be destitute of the knowledge of his own legal rights and the means of acquiring such knowledge. (*Brant v. Virginia Coal & Iron Co.,* 93 U. S. 326, 23 L. ed. 927; *Steel v. St. Louis Smelting & Refining Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. ed. 226; *Lux v. Haggin,* 69 Cal. 255, 4 Pac. 919, 10 Pac. 674; *Atkinson v. Plum,* 50 W. Va. 104, 40 S. E. 587, 58 L. R. A. 788; *Stockman v. Riverside Land & Irr. Co.,* 64 Cal. 57, 28 Pac. 116; *New York Rubber Co. v. Rothery,* 107 N. Y. 310, 1 Am. St. 822, 14 N. E. 269.)

One having full knowledge of all the facts must be presumed to have full knowledge of the law controlling his rights. In other words, he is presumed to know whether such facts can constitute an estoppel. (*Lux v. Haggin, supra.*)

If the quitclaim deed was obtained by misrepresentation or coercion, there is no reason for invoking either estoppel or laches. As was said by the supreme court of Iowa:

"But it is said that plaintiff should be held estopped to maintain this action because of his laches and of his conduct with reference to the land and his dealings with the appellants. In our judgment the record is wholly wanting in the essential elements of estoppel. Finding, as we do, that the original relation of the parties was that of debtor and creditor, that the conveyances were taken as a mortgage security, and that the equity of redemption was never relinquished, it necessarily follows that the relation of debtor and creditor, mortgagor and mortgagee still exists, and that the extent of appellant's right in premises is to demand and receive every dollar of the debt due them. When that is provided for and accomplished, there is no principle of law or equity which entitles them to ask more, and, if any of the property on which they have held a lien is left unexhausted, a decree for its release to their debtor wrongs no one. It is true that plaintiff waited three years after the attempt of appellants to forfeit his rights in the lands. Meantime the appellants were in the position of mortgagees in possession, their lien was in no manner interfered with, and a delay of three years in asking an accounting and to enforce his right of redemption is not so unreasonable that the court will deny him a hearing. The decree below allows appellants principal and interest of the original debt and compensation for improvements made and taxes paid on the land. It accomplishes substantial justice, and we think it must stand." (*Fort v. Colby, supra.*)

Respondent Oakes seeks to avoid liability on the ground that he was a *bona fide* purchaser. This defense is not available upon a motion for nonsuit, and would become proper only when the defendant is put upon his proof. "The doctrine of *bona fide* purchaser is peculiarly available for purposes of defense." (2 Pomeroy, Equity Jurisprudence, sec. 735 et seq.; *Ewald v. Hufton,* 31 Ida. 373, 173 Pac. 247.)

From what has been said it follows that the trial court erred in sustaining the motion for nonsuit. The judgment is

reversed and the cause remanded for further proceedings in accordance with the views expressed in the foregoing opinion. Costs are awarded to appellant.

Morgan and Rice, JJ., concur.