(No. 5716.   October 22, 1931.)

THE FEDERAL LAND BANK OF SPOKANE, a Corporation, Appellant, v. E. F. BISSONNETTE et al., Respondents.

[4 Pac. (2d) .364.]

Bissell & Bird and Arthur W. Ostrom, for Appellant.

James R. Bothwell and W. Orr Chapman, for Respondents.

VARIAN, J.—Appellant brought this suit to foreclose a mortgage on real estate situate in Twin Falls county, on April 18, 1930. The court decreed foreclosure but decreed certain unpaid water assessments due respondent, Twin Falls Canal Company, levied for the years 1921, 1922, 1923, 1924, and 1926, aggregating the sum of $500.30, including interest, to be superior to the lien of appellant's mortgage as claimed by cross-complaint. From that portion of the decree in favor of said respondent plaintiff appeals. The only question presented by this appeal is, did the court err in decreeing the water assessment liens to be prior to that of appellant's mortgage? Appellant does not contest the priority awarded for the assessments levied for the years 1928 and 1929, aggregating $31.90.

On April 8, 1918, Bissonnette and wife executed their note to appellant for the principal sum of $1400, payable in semi-annual amortized payments of $45.50 over a period of years, the last payment falling due October 8, 1952. This note was secured by mortgage of even date therewith upon forty acres of land in Twin Falls county, Idaho. Bissonnette defaulted in his payments, after making the twenty-second in October, 1929, and failed to pay state and county taxes assessed against the property for the years 1926, 1927, and part of 1929, afterwards paid by appellant. He likewise defaulted in the payment of the water maintenance assessments due respondent, Twin Falls Canal Company, for the years 1921, 1922, 1923, 1924, 1926, 1928 and 1929.

Said respondent is a Carey Act operating company and the mortgaged lands are within the project for which it

functions. There is no question raised as to the amounts for which respondent claims prior liens but appellant contends that, due to the laches of respondent in prosecuting its suits for foreclosure thereof, it has lost its priority and should have its liens for the above-mentioned years, except 1928 and 1929, declared subsequent to the lien of appellant's said mortgage.

It is not controverted that respondent filed its notices of claim of lien against the mortgaged premises, within the statutory time, in the office of the county recorder of Twin Falls county, for the delinquent assessments for each of the years above mentioned, and thereafter, within the time limited by statute, commenced its suit to foreclose the same in the proper court. *Lis pendens* was also recorded for each suit. Summons issued and was served upon some of the numerous defendants, and while appellant was made a party defendant in the foreclosure cases summons was not served upon it. Appellant is a nonresident, or foreign, corporation.

When suits were commenced the delinquent maintenance assessments for the year 1921, aggregated $149,458.65 for the year 1922, $104,676.55 for the year 1923, $24,348.36; for the year 1924, $8,744.16; and for the year 1926, $25,623.23. Of these amounts sued for, at the date of the trial of the instant case, there was uncollected of said amounts the following: For the year 1921, $1507.52; for the year 1922, $1501.33; for the year 1923, $425.10; for the year 1924, $921.80; and for the year 1926, $1323.51.

There is testimony that the years mentioned constituted a period of deflation on the Twin Falls tract and that the farmers were unable to pay their water assessments, or the banks to loan them money to pay them, particularly for the year 1921, when all loan companies operating in that section, except appellant, and business men on the tract, and farmers generally, requested the respondent canal company not to proceed with foreclosure proceedings, owing to prevailing unfavorable financial conditions. Loan companies generally, with the exception of appellant, requested that service of summons in the lien foreclosure cases be not

made, in cases involving lands mortgaged to them, as they preferred to pay the assessments and so save the costs of foreclosure.

It was stipulated that no service of summons has been made in any of the cases involving the water liens for the years 1920, 1921 and 1922, since early September, 1924. And no service was made upon appellant in any of the cases.

The court found, among other facts, that since prior to the year 1921 the respondent, Twin Falls Canal Company, has been actually controlled by the settlers and owners of lands comprising the Carey Act project under which it functions. It further found that respondent Canal Company had proceeded with due diligence in the prosecution of its lien foreclosure suits and that they were not subject to dismissal for lack of prosecution as prayed in appellant's cross-complaint.

Appellant does not raise the constitutionality of C. S., sec. 3040, and the amendment thereof, Sess. Laws 1925, chap. 107, p. 153, and concedes in his brief that these provisions grant respondent "a first and prior lien, except as to the lien of taxes, upon the land to which such water and water rights are appurtenant" (see *Carlson-Lusk Hardware Co. v. Kammann,* 39 Ida. 654, 229 Pac. 85), unless such priority has been lost through failure to proceed diligently in the enforcement of its several liens.

As a general rule mere delay in asserting a right does not operate to bar its enforcement in equity unless its enforcement is barred by the statute of limitations. (21 C. J. 221; 10 R. C. L. 396; *Smith v. Faris-Kesl Const. Co.,* 27 Ida. 407, 150 Pac. 25; *Just v. Idaho Canal etc. Co., Ltd.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381, 385; *Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484, 487.)

Where laches is plead as a defense, "the facts and circumstances of each case must govern courts of equity in permitting such defense to be made. Lapse of time is an important element, but it is not controlling, it is only one of the controlling and important factors, and the courts should give proper and due regard to the surrounding cir-

cumstances and the acts of the parties and their relationship to the property involved in the controversy." (*Bergen v. Johnson, supra;* 21 C. J. 217.) In an earlier case Mr. Justice Ailshie thus stated the exception to the rule:

"As we understand the rule, however, it has this exception, that it is not invoked or applied by the courts in cases where it manifestly appears that its application is not essential in order to protect the adverse party from being placed in a worse condition by reason of the delay than he would have been in had the action been prosecuted with greater diligence."

*Just v. Idaho Canal etc. Co., supra,* where *Parker v. Bethel Hotel Co.,* 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706, is cited with approval. *American Min. Co., Ltd., v. Trask,* 28 Ida. 642, 156 Pac. 1136, 1138, where it is stated that "it does not appear that appellants have, or that anyone else has, been injured or in any way placed to disadvantage by the delay." In a later case Mr. Justice McCarthy stated:

"When a right to recover money is based on an express contract, action is not barred until the period of the statute of limitations has expired, and this holds good even if the form of the action is equitable, unless, first, the delay is inexcusable, and second, special circumstances exist which make it inequitable to permit recovery." (*Wilson v. Sunnyside Orchard Co.,* 33 Ida. 501, 196 Pac. 302, 303.)

Appellant contends that it has been injured by delay in enforcing respondent's liens: 1. Because of the failure to serve appellant promptly with summons it was not advised of the pendency of the actions and the rapidly accumulating unpaid maintenance; 2. The interest rate on the unpaid portion of respondent's liens is abnormally high (one per cent per month), in some cases in the aggregate exceeding the principal; and 3. While liens and interest have been piling up taxes have also been accumulating.

The record shows that *lis pendens* was issued in every lien foreclosure filed and appellant had at least constructive notice, not only of the commencement of the foreclosure suits, but of each lien claimed which was of record in the

county recorder's office. (C. S., sec. 6674.) The means of ascertaining whether any of the maintenance charges were paid were always at appellant's command.

While it is true the interest rate on the maintenance assessments is high, appellant was charged with knowledge· of that fact and could have protected itself by paying off the respondent's prior liens. It has been held that a prior lienholder is not required., under rules of law or equity, to enforce his lien for the benefit of a subsequent lienholder. (See *Peter Mintener Lumber Co. v. Janisch,* 44 S. D. 42, 181 N. W. 914; 41 C. J. 594.)

As to unpaid taxes for the years 1926, 1927 and 1929, piling up, they were superior to respondent's liens, and again appellant is charged with knowledge thereof, and could have protected itself. (See *Utah Commercial & Sav. Bank v. Fox,* 40 Utah, 205, 120 Pac. 840.)

So far as the record shows the value of the mortgaged lands may exceed the total amount of all liens against it, and appellant does not contend that it does not. Therefore, how was appellant substantially injured by the delay in prosecuting the several water assessment lien actions? On the other hand, under the covenants of its mortgage, appellant had the right to pay the water assessments and taxes against the mortgaged premises, upon default by the mortgagors, and said amounts were then secured by the mortgage lien, whether it elected to declare the whole indebtedness due and payable or not. It had the option, on default of the mortgagors in making payment of the water assessments, or taxes, to declare the whole indebtedness immediately due and proceed to foreclose its mortgage.

At all times, then, appellant was in position to adequately protect its own interests, either by paying off the amounts of the assessments and adding them to the amount secured by its mortgage, or by accelerating the maturity of its mortgage and foreclosing the same. Having the means of information open to it appellant failed to take action. It may not gamble on the outcome of such a course and then be permitted to successfully charge laches when the result

is detrimental to its interests. (See *Ward v. Sherman,* 192 U. S. 168, 24 Sup. Ct. 227, 48 L. ed. 391.),

Decree affirmed. Costs to respondent.

Lee, C. J., and Budge, Givens and McNaughton, JJ., concur.