279 P.2d 1067

Dale D. FLORA, Plaintiff-Respondent,

v.

Harry J. GUSMAN, Frank N. Gusman, and W. W. Jones, as Executor of the Estate of Emma Gusman, Deceased, Defendants-Appellants.

No. 8170.

Supreme Court of Idaho.

Feb. 9, 1955.

Garrity & Garrity, Nampa, for appellants.

Anderson, Kaufman & Kiser, Boise, Albaugh, Bloem, Barnard & Smith, Idaho Falls, for respondent.

PORTER, Justice.

By this action, plaintiff-respondent seeks a judgment decreeing that he is the owner of an undivided one-twelfth interest in certain real and personal property and decreeing the partition thereof. Such property consists of the property included in the claimed estate of Emma Gusman, deceased, and is now in the possession of appellants. The trial court made and entered findings of fact, conclusions of law,

and judgment favorable to respondent. This appeal is from such judgment.

There is no serious conflict in the evidence as to the foundation facts in this case. James E. Gusman, a resident of Owyhee County, died intestate in the year 1907. At the time of his death he was residing on his cattle ranch with his family. Such family consisted of his wife, Emma Gusman, their two sons, the defendants, Harry J. Gusman and Frank N. Gusman, and their daughter, Jennie Gusman. Frank N. Gusman, the youngest of such children, was then 27 years of age. The entire family assisted in the work on the ranch.

James E. Gusman was ill for some six months prior to his death. During such time his wife gradually took over the management of the cattle ranch. After the death of James E. Gusman, there was no change in the management and handling of the ranch. The estate of James E. Gusman was not probated. There was no division of the real or personal property. The cattle belonging to the estate and the additions thereto continued to be run on the ranch. The two sons, as a partnership, also ran cattle on the ranch under their own brand. They did not pay any rent or for any feed. Likewise, the sister, Jennie Gusman, ran her separate cattle on the ranch under her own brand and did not pay any rent or for any feed. The cattle were all run together. In addition to the home place there were two other houses on the ranch and at some undisclosed dates each of the sons moved into one of such houses.

There was no break in the continuity of the management of the ranch by Emma Gusman. During the ensuing years she continued to manage the ranch as a unit. She paid the taxes and handled the business affairs. When a sale of cattle was made, the proceeds were divided according to the brands of the cattle sold. All the children continued to work on the ranch. They received no wages for their work. The mother was a strong personality and kept the family working together as a closely knit ranch family.

According to the testimony of the defendants, Frank N. Gusman and Harry J. Gusman, there was nothing said whatever by the children or by the mother about a division of the property. The family lived in harmony. None of the children made a claim for a share of the property and the mother asserted no adverse claim to be the owner of the entire estate of James E. Gusman, deceased.

Under the law in force in the State of Idaho in 1907, one-half the estate of James E. Gusman descended to his widow, Emma Gusman, and the remaining one-half to the three children, each child inheriting a one-sixth interest in the estate.

In 1918 Jennie Gusman married William H. Flora, an employee on an adjoining ranch. In 1920 they moved into the home

with Emma Gusman. William H. Flora was paid wages for his work on the ranch and he and his wife also ran cattle on the Gusman ranch.

In 1936 Jennie Flora died intestate and without issue. Under the law of descent and distribution in force at such time, her mother, Emma Gusman, inherited one-half of Jennie Flora's estate and the other one-half thereof descended to her husband, William H. Flora. Thus the undivided one-sixth interest of Jennie Flora in the James E. Gusman estate descended one-twelfth to Emma Gusman and one-twelfth to William H. Flora.

William H. Flora continued to reside with Emma Gusman, continued to work on the ranch and to draw wages therefor and continued to run cattle thereon under the same conditions until a short time before his death when he liquidated his cattle business. He died testate in 1949. Plaintiff-respondent was the residuary legatee under his will. No mention was made in his will of the interest in the James E. Gusman estate. The estate of William H. Flora was probated in 1949–50.

Respondent was the nephew of William H. Flora. He is also the step-son of Harry J. Gusman, being the son of the first wife of Harry J. Gusman. He commenced living on the Gusman ranch in about 1919, living there for 19 years, most of the time, apparently, in the home with William H. Flora and wife.

Emma Gusman continued to manage and handle the Gusman ranch in the same manner and method as it had always been handled until the time of her death in 1950. Probate of her estate was started in 1950 and is still pending. By her will she left all her estate to her two sons except $50 each to five grandchildren and to Dale D. Flora.

In 1951 a petition for administration after lapse of two years was filed in the Probate Court of Owyhee County in the James E. Gusman estate by the appellant, Harry J. Gusman. By the decree in such proceedings it was determined that the heirs of said decedent were Mrs. J. E. Gusman, Harry J. Gusman, Frank N. Gusman and Jennie Gusman Flora.

In 1952 a petition for determination of heirs and right of descent in the matter of the estate of Jennie Gusman Flora was filed by respondent in the Probate Court of Owyhee County. By decree in such proceedings it was determined that her claimed one-sixth interest in the real and personal property of James E. Gusman, deceased, descended equally to her mother, Emma Gusman, and her husband, William H. Flora.

At the outset of the trial of this cause it was stipulated and agreed that the plaintiff would be entitled to recover unless defendants were able to prove one or both of their affirmative defenses of adverse possession and laches. By their specifications of error, appellants urge in effect that the trial court

erred in failing to find that the claim of respondent was barred either by adverse possession or by laches or by both.

■ It is well established that the burden of proving each and every element of adverse possession by clear and satisfactory evidence is upon the party relying upon title by adverse possession. Salvis v. Lawyer, 73 Idaho 469, 253 P.2d 589; Brown v. Brown, 18 Idaho 345, 110 P. 269. In Pleasants v. Henry, 36 Idaho 728, at pages 735–736, 213 P. 565, at page 567, we approved the following language:

"'All the authorities agree that, in order to bar the true owner of land from recovering it from an occupant in adverse possession and claiming ownership through the operation of the statute of limitation, the possession must have been, for the whole period prescribed by the statute, actual, open, visible, notorious, continuous, and hostile to the true owner's title and to the world at large.'

*    *    *    *    *    *

"'Hence, an open and notorious occupation with hostile intent is a necessary constituent of an adverse possession. Neither a hostile intent without such occupation, nor such occupation without hostile intent, is sufficient.'"

Such language was again approved in Hogan v. Blakney, 73 Idaho 274, 251 P.2d 209 and in Salvis v. Lawyer, supra.

■ After the death of James E. Gusman, his estate not having been probated, his widow and the three children became tenants in common of his estate in the respective shares as provided by the laws of descent then in effect. In Terry v. Terry, 70 Idaho 161, at page 168, 213 P.2d 906, at pages 909–910, we indicated the things that must be done by a cotenant in order to start the running of the statute of limitations. We said:

"Appellants urge that the court erred in finding that the appellants had not acquired title by adverse possession. In Vaughan v. Hollingsworth, 35 Idaho 722, at page 731, 208 P. 838, 841, this court quoted with approval from Elder v. McClaskey, 6 Cir., 70 F. 529, 17 C.C.A. 251, as follows: 'Before adverse possession by one tenant in common against another can begin, the one in possession must, by acts of the most open and notorious character, clearly show to the world, and to all having occasion to observe the condition and occupancy of the property, that his possession is intended to exclude, and does exclude, the rights of his cotenant. It is not necessary for him to give actual notice of this ouster or disseising of his cotenant, to him. He must in the language of the authorities, "bring it home" to his cotenant. But he may do this by conduct, the implication of which cannot escape the notice of the

world about him, or of anyone, though not a resident in the neighborhood, who has an interest in the property, and exercises that degree of attention in respect to what is his that the law presumes in every owner.' "

See also, Chapin v. Stewart, 71 Idaho 306, 230 P.2d 998; West v. Evans, 29 Cal.2d 414, 175 P.2d 219.

In this case we have the additional situation that the cotenants consist of a mother and her children up until the death of Jennie Gusman Flora in 1936 when the situation was changed slightly by the substitution of the son-in-law, William H. Flora. It is generally held that the possession of a parent is deemed subordinate to the title of the child irrespective of the degree of dominion exercised over the property by the parent and is not to be deemed hostile until made so by some unequivocal act of the parent. Parker v. Beckwith, 251 Mich. 434, 232 N.W. 208; Clendenin v. Clendenin, 181 N.C. 465, 107 S.E. 458; Collins v. Colleran, 86 Minn. 199, 90 N.W. 364; Mullan v. Bank of Pasco County, 101 Fla. 1097, 133 So. 323; Chase v. Lavelle, 105 Neb. 796, 181 N.W. 936.

The findings of the trial court that the possession of Emma Gusman of the property and her management of same were at no time hostile to her cotenants and that there was no hostile, unequivocal act on the part of Emma Gusman which would start the running of the statute of limitations against her cotenants, is supported by the record. The trial court did not err in finding against the claim of adverse possession.

The second contention of appellants is that the trial court erred in failing to sustain their defense of laches. The essential elements of the defense of laches are set out in 19 Am.Jur., Equity, Sec. 498, pages 343-344, as follows:

"A suit is held to be barred on the ground of laches or stale demand where and only where the following facts are disclosed: (1) Conduct on the part of the defendant, or of one under whom he claims, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy, * * * ; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred."

This court has on a number of occasions considered the defense of laches. In Just v. Idaho Canal, etc., Co., Ltd., 16 Idaho 639, at page 654, 102 P. 381, at page

385, in connection with the principle that a stale demand will be barred by laches, we said:

"As we understand the rule, however, it has this exception: That it is not invoked or applied by the courts in cases where it manifestly appears that its application is not essential in order to protect the adverse party from being placed in a worse condition by reason of the delay than he would have been in had the action been prosecuted with greater diligence."

In Bergen v. Johnson, 21 Idaho 619, at page 627, 123 P. 484, at page 487, in discussing the defense of laches, we held:

"The facts and circumstances of each case must govern courts of equity in permitting such defense to be made. Lapse of time is an important element, but it is not controlling. It is only one of the controlling and important factors, and the courts should give proper and due regard to the surrounding circumstances and the acts of the parties and their relationship to the property involved in the controversy."

In Smith v. Faris-Kesl Const. Co., Ltd., 27 Idaho 407, at pages 426–427, 150 P. 25, at page 31, we stated:

"Lapse of time alone is not sufficient to justify a dismissal of the action. In cases of this kind, when a defense of laches is sustained, it is upon the theory that the delay, taken with other circumstances in the case, is satisfactory evidence that the cause of action has been abandoned, or that it resulted in injury to some one not responsible for the delay, and, where this theory or presumption is overcome by other facts and circumstances, the defense should not prevail."

In American Mining Co., Ltd., v. Trask, 28 Idaho 642, at page 649, 156 P. 1136, at page 1138, this court reiterated the rule as quoted above from Just v. Idaho Canal, etc., Co., Ltd., supra, and said further:

"* * * but it does not appear that appellants have, or that any one else has, been injured, or in any way placed to disadvantage by the delay."

In Johansen v. Looney, 31 Idaho 754, at page 762, 176 P. 778, at page 780. it is stated:

"* * * the doctrine of laches rests not alone upon the lapse of time, but upon the inequity of permitting the claim to be enforced * * *."

In Federal Land Bank of Spokane v. Bissonnette, 51 Idaho 219, 4 P.2d 364, we held that the defense of laches does not apply where unnecessary to protect adverse party from being placed in worse condition than he would have been in had action been prosecuted with greater diligence; and that circumstances of each case must govern courts of equity in permitting defense of laches to be made.

In Eldridge v. Idaho State Penitentiary, 54 Idaho 213, 30 P.2d 781, this court discussed its various holdings on the doctrine of laches and re-emphasized that lapse of time alone is insufficient to justify dismissal of action for laches; and that such defense is sustainable only on the theory that delay with other circumstances is satisfactory evidence of abandonment of cause of action or resulted in injury to one not responsible therefor.

The circumstances of the instant case do not disclose any overt acts or conduct on the part of Emma Gusman prior to her death challenging the rights of her cotenants in the property. There was nothing to put respondent or his predecessors in interest on notice of any hostile or adverse claim by Emma Gusman. A claimant is not to be held in default until there is something to put him on notice of the defendant's adverse claim. 19 Am.Jur., Equity, Sec. 504, page 349.

The record does not disclose any injury to Emma Gusman or to her estate by the delay in asking for the partition of the James E. Gusman estate. It does not show any expenditures other than such as were made from the income from the property. The increased value of the real estate and the increased unit value of the cattle are the result of altered economic conditions. The increased number of cattle resulted from the building up of the herd by natural increase and by purchase with assets of the estate. It does not appear that the keeping of the estate together resulted in harm and was not for the best interest of all the cotenants. The evidence justifies the finding of the trial court that Emma Gusman and her estate suffered no damage by the delay in the bringing of the suit for partition. The trial court did not err in refusing to dismiss respondent's action by reason of laches.

The judgment of the trial court is affirmed. Costs to respondent.

TAYLOR, C. J., and KEETON, ANDERSON and SMITH, JJ., concur.