319 P.2d 965

MOUNTAIN HOME IRRIGATION DISTRICT, an irrigation district, Plaintiff-Respondent,

v.

Dan DUFFY, Defendant-Appellant.

No. 8530.

Supreme Court of Idaho.

Dec. 24, 1957.

Karl Jeppesen, Boise, for appellant.

Anderson, Kaufman & Anderson, Boise, for respondent.

TAYLOR, Justice.

Plaintiff (respondent) is the owner of a right to the use of 50,000 miners inches of the waters of Rattlesnake creek in Elmore County, for the irrigation of lands within its boundaries by decree filed May 31, 1917, with priority date of June 1, 1891. Plaintiff owns and maintains a reservoir on Rattlesnake creek known as the Mountain Home reservoir. Water from the creek is stored in this reservoir and is drawn therefrom and used as needed during the irrigation season in the irrigation of lands within the district.

August 7, 1917, a water license was issued by the state engineer to one John Hoffman for 33/50 of one cubic foot per second of the water of Fast Freight creek, a tributary of Rattlesnake creek.

Application for this license had been made by Hoffman April 5, 1910, and the right granted was given priority from that date. The Hoffman ranch lies along and adjacent to the course of Rattlesnake creek and above the Mountain Home reservoir.

The works constructed by Hoffman for the exercise of this right consist of a dam in Rattlesnake creek about two and a half miles above his ranch, a ditch leading from the diversion at that point through a coulee lying between Rattlesnake creek and Fast Freight creek, a reservoir on the latter creek about a mile above the Hoffman ranch and above confluence of Fast Freight creek and Rattlesnake creek, and a ditch from the reservoir to the ranch. Hoffman in his "proof of completion of works" represented the capacity of the reservoir to be 200 acre feet. By means of the connecting ditch, water was diverted from Rattlesnake creek and into the channel of Fast Freight creek, through which it flowed into the Hoffman reservoir.

February 1, 1952, defendant entered into a contract for the purchase of the Hoffman property, and took possession in the spring of that year. At that time the diversion ditch was filled with earth from highway construction along its course and it was not used by defendant that year, but was cleaned out by the highway department and a neighbor (who also used it for stock water) in the fall of 1952. This same neighbor testified that defendant used another ditch, belonging to the neighbor, for five or six days to convey water to the Hoffman reservoir, and that the reservoir filled that spring, but largely from water from the Fast Freight creek watershed. There was testimony that the creek on which the Hoffman reservoir is located is not properly identified by the name Fast Freight, and except in high-water years its run-off is negligible.

In the spring of 1953 the defendant diverted water from Rattlesnake creek to his reservoir. Two or three times his diversion dam was broken by the plaintiff's ditch rider, and the water released to flow down Rattlesnake creek. Defendant testified that each time "he took it right back" again. He also testified his dam was torn out in the spring of 1954 and he "had to replace it a couple of times."

March 31, 1954, this action was commenced to enjoin defendant's diversion of the water.

The rights to the waters of Rattlesnake creek and its tributaries were decreed by the 1917 decree. Among the rights decreed at that time was one appurtenant to the Hoffman ranch. These decreed rights include normal flow and, where no reservoir is used, become effective each year at the opening of the irrigation season. None of them are in question in this action. Only early spring runoff or flood water is claimed adversely by the defendant. In his answer defendant denies plaintiff's prior right; alleges that he and his predecessors have diverted flood waters from Rattlesnake creek for over forty years; and by way of cross complaint alleges that he and his predecessors by adverse possession and use have acquired a prescriptive right superior to plaintiff's right. As an affirmative defense, he further alleges that he and his

predecessors expended large sums of money for the development and improvement of the Hoffman ranch in reliance upon the right to divert and use the water in issue, all with the full knowledge and acquiescence of the plaintiff, and that plaintiff is estopped by laches now to assert its prior right.

■ The burden was upon defendant to establish all of the elements of his claimed prescriptive right. Brossard v. Morgan, 7 Idaho 215, 61 P. 1031; Village of Fairview v. Franklin, etc., Irr. Co., 59 Idaho 7, 79 P.2d 531; Flora v. Gusman, 76 Idaho 188, 279 P.2d 1067; Wellsville East Field Irr. Co. v. Lindsay Land & Livestock Co., 104 Utah 448, 137 P.2d 634. See Northern California Power Co. v. Flood, 186 Cal. 301, 199 P. 315.

The early spring runoff in Rattlesnake creek was shown to occur during a comparatively short period of time before the beginning of the irrigation season. One witness stated it as ten days to two weeks. It was also shown that the flow of the creek varied greatly from one season to another. There were a number of wet or high-water years when the runoff and the flow of the creek were sufficient to satisfy the rights of "everybody." There were years when the reservoirs would just barely fill or nearly fill, and there were dry years when the flow was not sufficient to water the stock of the ranchers along the creek. In such dry years the flow would not be sufficient to reach the Mountain Home reservoir. It was also shown that at the end of some high-water seasons the plaintiff had water left in its Mountain Home reservoir, which it carried over for use the next year in case the reservoir should not fill.

■ One of the essential elements of claim of prescriptive right to the use of water for irrigation, is that the claimant must show that he has used the water during each of the irrigation seasons of the five-year period when it was actually needed by the prior owner. This rule was stated by the Supreme Court of Montana as follows:

"* * *; two parties may at the same time be in possession of water from a creek and neither hold adverse to the other; each may justly claim the right to use the water he is using, without affecting the rights of the other, and therefore, in order to constitute adverse possession of water, the burden is upon the claimant to show that his use of the water deprived the prior appropriators of water at times when such prior appropriators actually needed the water; the use does not become adverse until it interferes with the use thereof by the prior appropriators, and therefore proof merely that the claimant used water and claimed the right to use it is no proof whatever of adverse use." St. Onge v. Blakely, 76 Mont. 1, 245 P. 532, at pages 536–537.

This court quoted the rule with approval in Village of Fairview v. Franklin, etc., Irr. Co., 59 Idaho 7, 79 P.2d 531; Head v. Merrick, 69 Idaho 106, 203 P.2d 608; and Follett v. Taylor Brothers, 77 Idaho 416, 294 P.2d 1088.

Witnesses for the defendant testifying to various periods of time from 1910 on down to the date of trial, when they were respectively acquainted with or had occasion to observe the diversion of water from Rattlesnake creek, stated they saw water flowing in defendant's diversion ditch "numerous years," "most every year," and "continuously," and "every year when there was water in the creek." These witnesses could not remember as to particular years, or which were high-water or which were dry years, or whether in years when they saw the water in defendant's diversion ditch there was sufficient flow to fill the plaintiff's Mountain Home reservoir also. The most accurate testimony as to the circumstances of the diversion of water by defendant's predecessor was given by defendant's witness George Hall, who had been ditch rider for the plaintiff from 1936 to 1948, inclusive, excepting the two years 1941 and 1942. This witness said he passed by defendant's point of diversion every week. He did not remember whether defendant's predecessors took water every year, but thought they took it every year except in dry years when there was not sufficient water to be diverted, or not more than enough for stock watering purposes. He had orders from his employer to break defendant's diversion dam and turn the water down the channel of Rattlesnake creek when it was needed to fill the Mountain Home reservoir. In seasons when the reservoir was full or he could see that it would fill, he did not molest defendant's diversion, but in seasons when it appeared to him that the reservoir would not fill, he broke the diversion dam, sometimes several times in one season. When asked what happened on those occasions, he answered, "Well, they turned it right back in again." On cross-examination he testified as follows:

"Q. Every year that there was inadequate water flowing to fill that reservoir, then you cut off the Hoffman diversion? A. That's right.

"Q. And sent the water on down Rattlesnake creek to the reservoir? A. That's right.

"Q. And you did that not on just one occasion each year but every time you went by there if it was in a year when the reservoir was likely not to fill? A. That's right.

"Q. Sometimes you did it three or four times in a year in the short periods? A. Yes.

"Q. And sometimes less often? A. That's right.

"Q. And sometimes the water flowed freely after you cut that dam out— A. That's right.

"Q. —for several days, and sometimes this flowed down Rattlesnake several days into the reservoir and sometimes shorter periods of time? A. That's right. Sometimes it was turned off the same day."

This witness also testified, as did other witnesses, that the diversion dam was constructed of rocks and that water flowed through the rocks, during times that defendant or his predecessor was taking water by means of the diversion ditch. The amount of the flow through the dam was not shown, although some of the witnesses stated at times it would not be more than enough for stock water, and at times and in high-water years it flowed through and over the dam in considerable volume.

A careful examination of all the testimony in the record convinces us that it is insufficient to establish adverse use of the water during times when it was actually needed by the plaintiff, and hence insufficient to establish the claimed right by adverse possession. The court's finding to that effect was proper.

Defendant contends the evidence shows his use of the water was inconsistent with the plaintiff's prior right during the required prescriptive period and is therefore sufficient, even if it is not sufficient to show that his use was during times when the water was actually needed by plaintiff. In support of this contention he cites the following from Village of Fairview v. Franklin, etc., Irr. Co., supra:

"Use must be accompanied with claim adverse to and inconsistent with the adversaries' rights and use of the property." 59 Idaho at page 17, 79 P. 2d at page 535.

That is the case in which this court first quoted the rule from Montana. If there is a difference in the two statements, the one urged by defendant must be held to be a general proposition. As applied to water rights it is qualified by the requirement that the use must be at times when the owner needs the water.

It must be remembered that the policy of the law of this state is to secure the maximum use and benefit of its water resources. Reynolds Irrigation District v. Sproat, 69 Idaho 315, 206 P.2d 774; Constitution, Art. 15; §§ 42–104, 42–222 I.C. To effectuate this policy, the legislature has made it a misdemeanor to waste water from a stream, the waters of which are used for irrigation. § 18–4302 I.C. Under this section and the constitutional policy cited, it is the duty of a prior appropriator to allow the water, which he has the right to use, to flow down the channel for the benefit of junior appropriators at times when he has no immediate need for the use thereof. To allow a junior, or other, appropriator to establish an adverse right to such water during times when it is not required, and not being used, by the original appropriator, on the theory that such adverse use was inconsistent with the right of the prior appropriator, would subvert the purpose of

the law and encourage wasteful diversion and use of water in violation thereof. In Hall v. Blackman, 8 Idaho 272, 68 P. 19, this court said:

"The claimant must have used such water continuously, uninterruptedly, and adversely for a period of five years. The use of such water must be an invasion of the rights of the person against whom such right is sought to be established, such as would give a cause of action in favor of the latter. In Long on Irrigation (section 90) the author says: 'No adverse user can be initiated until the owners of the water right are deprived of the benefit of its use in such a substantial manner as to notify them that their rights are being invaded.' It follows from the rule there stated that a prescriptive right to the use of water cannot be acquired by the use thereof with the consent or permission of the owners, and as under the law of this state it is made a misdemeanor for one who has the right to the use of water to waste it, and the law requires him to permit it to flow down the stream in case his necessities for the time do not require its use, thus it is made by the law difficult to acquire a prescriptive right to the use of water. For, if the law requires the one entitled to the use of water to let others use it in case he may not, for the time, need it, they may have its use under the provisions of the law which commands the consent of the owner." 8 Idaho at page 282, 68 P. at page 21.

The rule that the adverse use must in fact conflict with the owner's right has long been the law in this jurisdiction. Brossard v. Morgan, 7 Idaho 215, 61 P. 1031; Koon v. Empey, 40 Idaho 6, 231 P. 1097; Pence v. Shivers, 40 Idaho 181, 232 P. 568.

■ As to the defense of estoppel by laches, the evidence shows that defendant's predecessor Hoffman put approximately 120 acres of land under cultivation, and under irrigation at times when water was available; that he fenced the ranch and built a nine-room house thereon, and some other small outbuildings, during the early period of his occupancy; and that defendant after he acquired the property built a five-room cottage thereon. The evidence is wholly insufficient to show that these improvements were made either by the predecessor or by the defendant in reliance upon any relinquishment of water rights by the plaintiff, or in reliance upon its acquiescence in any adverse use thereof by either the predecessor or the defendant. The finding of the court to that effect is sustained.

■ Lapse of time is not alone sufficient to defeat a right on the ground of laches. It must be shown that the defendant has been misled, to his injury, by the failure of the plaintiff to assert its right earlier. Just v. Idaho Canal, etc., Co., 16 Idaho 639, 102 P. 381; Bergen v. Johnson, 21 Idaho

619, 123 P. 484; Smith v. Faris-Kesl Const. Co., 27 Idaho 407, 150 P. 25; American Mining Co. v. Trask, 28 Idaho 642, 156 P. 1136; Johansen v. Looney, 31 Idaho 754, 176 P. 778; Federal Land Bank of Spokane v. Bissonnette, 51 Idaho 219, 4 P.2d 364; Flora v. Gusman, 76 Idaho 188, 279 P.2d 1067; Despain v. Despain, 78 Idaho 185, 300 P.2d 500; 43 C.J.S. Injunctions § 171 c, Laches (2). Cf. Hillcrest Irr. Dist. v. Nampa & Meridian Irr. Dist., 57 Idaho 403, 66 P.2d 115; Irrigated Valleys Land Co. of California v. Altman, 57 Cal.App. 413, 207 P. 401; Enterprise Irr. Dist. v. Tri-State Land Co., 92 Neb. 121, 138 N.W. 171; State of Washington v. State of Oregon, 297 U.S. 517, 56 S.Ct. 540, 80 L.Ed. 837.

Judgment affirmed. Costs to respondent.

KEETON, C. J., and PORTER, SMITH and McQUADE, JJ., concur.